Alfred Kenton McCRAY, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–93–021 CR.

Court of Appeals of Texas, Beaumont.

Submitted Dec. 10, 1993.

Decided May 11, 1994.

Douglas M. Barlow, Beaumont, for appellant.

Tom Maness, Dist. Atty., John R. Dewitt, Asst. Dist. Atty., Beaumont, for State.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

**OPINION**

WALKER, Chief Justice.

This is an appeal from a conviction for the felony offense of Kidnapping. In an entirely separate trial proceeding, appellant was convicted of Murder and sentenced to thirty-five years' confinement.[1] Immediately following said trial, the trial court conducted a hearing on the State's "Motion To Revoke Unadjudicated Probation" as the record reflects that appellant committed the murder while on deferred adjudication probation for kidnapping.[2] Appellant pleaded "true" to three of the allegations contained in the State's motion to revoke probation. There was no agreement between the State and appellant

---

1. *See McCray v. State,* 873 S.W.2d 126 (Tex. App.—Beaumont 1994, n.w.h.).

2. The kidnapping victim ultimately became the murder victim.

with regard to punishment. The trial court assessed appellant twenty (20) years' confinement in the Institutional Division of the Texas Department of Criminal Justice, with said sentence running concurrently with that assessed by the jury in the murder case. On appeal, appellant presents us with two points of error, *viz:*

> Point of Error One: The plea of guilty of appellant was involuntary, based upon an erroneous admonishment concerning the punishment range.

> Point of Error Two: Appellant was sentenced to a term of imprisonment not authorized by law.

In order to properly address both points of error, an examination of the plea proceedings concerning the kidnapping charge is in order. The transcript reflects that appellant's indictment was labeled "AGGRAVATED KIDNAPPING (§ 20.04)." In closely examining the language of said indictment, however, appellant appears to have actually been charged with "kidnapping" as defined under TEX. PENAL CODE ANN. § 20.03 (Vernon 1989)[3], and not "aggravated kidnapping" as defined under TEX. PENAL CODE ANN. § 20.04 (Vernon 1989)[4]. Under Section 20.03, the offense of "kidnapping" is a third degree felony. Appellant allegedly committed the kidnapping on or about February 5, 1990. The punishment range for a third degree felony committed on said date was "confinement in the Texas Department of Corrections[5] for any term of not more than 10 years or less than 2 years ... In addition to imprisonment, an individual adjudged guilty of a felony of the third degree may be punished by a fine not to exceed $10,000." TEX.

PENAL CODE ANN. § 12.34 (Vernon Supp. 1990).

The statement of facts from the plea proceedings as well as the copy of the written admonishments contained in the transcript reflect that appellant pleaded guilty to what the trial court referred to as "the lesser included offense of kidnapping." The statement of facts further reflects that the State agreed to proceed on the charge of "kidnapping" and that both parties agreed to recommend the trial court assess punishment at seven years' deferred adjudication probation and a fine of $1000. However, the written admonishments characterized the "kidnapping" charge, to which appellant pleaded guilty, as a second degree felony with a punishment range "of not more than 20 years or less than 2 years in the Institutional Division of the Texas Department of Criminal Justice and in addition, a fine not to exceed $10,000." The trial court also informed appellant that should his probation be revoked, appellant would be "subject to a possible 20 year term in prison." In the judgment adjudicating appellant's guilt, under "Offense Convicted:," the word, "Kidnapping" is inserted, and under "Degree:," the word, "Second" appears.

As provided for in the Penal Code, the offense of "Aggravated Kidnapping" under Section 20.04 is a first degree felony *unless* mitigating evidence is presented that the victim was released alive and in a safe place, in which case a second degree felony punishment may be assessed. Removing the word "Aggravated" relegates the offense of "Kidnapping" to a third degree felony offense under the terms of Section 20.03. We are unpersuaded by the State's attempt in their

---

3. Section 20.03 reads, in pertinent part:

(a) A person commits an offense if he intentionally or knowingly abducts another person.
\* \* \* \* \* \*
(c) An offense under this section is a felony of the third degree.

4. Section 20.04 reads as follows:

(a) A person commits an offense if he intentionally or knowingly abducts another person with the intent to:
(1) hold him for ransom or reward;
(2) use him as a shield or hostage;

(3) facilitate the commission of a felony or the flight after the attempt or commission of a felony;
(4) inflict bodily injury on him or violate or abuse him sexually;
(5) terrorize him or a third person; or
(6) interfere with the performance of any governmental or political function.
(b) An offense under this section is a felony of the first degree unless the actor voluntarily releases the victim alive and in a safe place, in which event it is a felony of the second degree.

5. Now the Texas Department of Criminal Justice, Institutional Division.

brief to characterize "kidnapping" as "either a first, second or third degree felony." Furthermore, their statement that, "Appellant was charged by indictment with the offense of aggravated kidnapping, a first degree felony[,]" is simply not what the indictment indicates. We are similarly unpersuaded by appellant's contention under his first point of error that the trial court's improper admonishment requires a *per se* finding of an involuntary plea.

TEX.CODE CRIM.PROC.ANN. art. 26.13(c) (Vernon 1989) provides:

> In admonishing the defendant as herein provided, substantial compliance by the court is sufficient, unless the defendant affirmatively shows that he was not aware of the consequences of his plea and that he was misled or harmed by the admonishment of the court.

In the instant case, appellant did not file a motion for new trial or make any attempt to supplement the record in order to satisfy his burden under Article 26.13. We find the following discussion in *Eatmon v. State*, 768 S.W.2d 310 (Tex.Crim.App.1989) to be enlightening:

> The Court recently confronted the same issue in *Robinson v. State*, 739 S.W.2d 795 (Tex.Cr.App.1987). In *Robinson*, the trial court admonished the defendant that the range of punishment in his case was two to ten years, when in fact the law provided for a punishment of two to twelve years. The actual sentence assessed was six years. In refusing to grant relief, the Court determined that since the punishment assessed was within both the actual and stated maximum there was "substantial compliance" with the requirements of Article 26.13, supra. *Robinson*, supra, at 801, citing *Taylor v. State*, 610 S.W.2d 471 (Tex.Cr.App.1980).
>
> "Such compliance constitutes 'a prima facie showing of a knowing and voluntary plea of guilty. The burden then shifts to the defendant to show that he entered the plea without understanding the consequences of his action and was thus harmed.' *Ex parte Gibauitch*, 688 S.W.2d 868, 871 (Tex.Cr.App.1985). See also *Whitten v. State*, 587 S.W.2d 156

> (Tex.Cr.App.1979)." *Robinson*, 739 S.W.2d at 801.

*Eatmon*, 768 S.W.2d at 311–312.

Unlike the defendant in *Eatmon*, appellant in the instant case was improperly admonished with a punishment range *in excess of* the actual punishment range for the offense with which he was charged. Appellant has not affirmatively proven to us how his plea of guilty to an ultimate punishment exposure, upon revocation, of twenty years imprisonment was the product of a plea bargain to which he reasonably would not have agreed had he been correctly admonished that his ultimate punishment exposure, upon revocation, would have been ten years imprisonment. We find that appellant has failed to show how he was misled by the trial court's admonishment. Based upon our disposition of appellant's second point of error, any absence of proof of harm will be vitiated.

■ We agree with appellant's second point of error that complains that appellant was sentenced to a term of imprisonment not authorized by law for conviction of the offense of kidnapping as defined under Section 20.03 of the Penal Code. As alluded to *infra*, the language of appellant's indictment as well as all of the remaining court documents refer to the offense to which appellant pleaded guilty as "Kidnapping." We decline to engage in the implications of penal code semantics as the State would have us do. We do disagree with appellant's statement that, "The Court of Appeals does not have the jurisdiction to reform a verdict unauthorized by law[,]" citing us to a case from the Houston 14th Court of Appeal. We take our cue from what we perceive to be the combined effect of *Bigley v. State*, 865 S.W.2d 26 (Tex. Crim.App.1993); and *Banks v. State*, 708 S.W.2d 460 (Tex.Crim.App.1986). *Bigley* held that under TEX.R.APP.P. 80, the courts of appeals have the authority to reform judgments, with said reformations not limited to merely clerical mistakes. *Id.* at 27. The *Banks* Court held that when the court has the necessary data and evidence before it for

reformation, the judgment and sentence may be reformed on appeal. *Id.* at 462.[6]

■ In the instant case, the statement of facts from the hearing on the State's motion to revoke appellant's probation reveals that the trial court was very concerned with regard to two issues. The first issue dealt with the trial court having been a part of granting appellant probation in direct opposition to the wishes of the victim. The second issue involved the trial court's disagreement with the jury's assessment of only thirty-five years' imprisonment for the brutal murder of the victim. Said issues are discussed by the trial court during the hearing as follows:

THE COURT: Well, I've got some mixed feelings about it. The—This file is replete and we are all familiar with my concern about the original plea bargain, but I followed it. It looks like that— What? About a month and a half later Mr. McCray violated it by committing this murder.

At that time there's notes in here where I asked the district attorney to please file a motion right away and the decision was made not to do that, wasn't it? It wasn't inadvertent. That was a conscious thing to wait until the murder trial. I don't quarrel with that.

\* \* \* \* \* \*

THE COURT: If it had been heard and if it had been granted and if sentence was imposed, then it would seem to me to make more sense to talk about stacking rather than wait until the end, especially in light of what the jury has said. I have some trouble. I agree with you about what you saying (sic) about every jury is different.

This jury heard everything about this case and elected—including probation and anoffense (sic) occurring a month or two after probation was granted and the whole nine yards. I in my own conscious (sic) am somewhat questioning as to whether or not I am somewhat as wise as those 12 people and if what I think should happen is really the right thing to do.

I take great exception to what Mr. McCray's conduct was. I feel somewhat responsible for the death of Mrs. Narcisse, because if it were not for my participation by following the plea bargain who knows what would have happened?

But I can't—I just am having a tough time getting around the fact the jurors looked at this and they certainly had every right in the world to impose a life sentence or anything close to show that they took it is seriously as certainly I take it.

Immediately following the above comments, the trial court sentenced appellant to what he (the trial court) believed to be the maximum term of incarceration, twenty years. Under Rule 80, as interpreted in *Bigley,* along with the holding in *Banks,* we find that the necessary evidence exists for us to reform the sentence in order to reflect the intent of the trial court and consistent with the proper range of punishment for the offense pleaded to. We, therefore, affirm the judgment of the trial court as to the conviction of appellant for the offense of "Kidnapping," however, we reform said judgment by changing the listed degree to "Third," and reform the punishment to reflect "10 years" confinement in the Institutional Division of the Texas Department of Criminal Justice.

AFFIRMED AS REFORMED.

BURGESS, Justice, concurring and dissenting.

I concur with the majority in point of error one. I dissent to the result in point of error two. The majority relies upon *Bigley v. State,* 865 S.W.2d 26 (Tex.Crim.App.1993), and *Banks v. State,* 708 S.W.2d 460 (Tex. Crim.App.1986), as authority for their reformation. The majority acknowledges that *Banks,* at 462, states: "When this Court has the necessary data and evidence before it for reformation, the judgment and sentence may be reformed on appeal." The majority then finds they have the necessary evidence to reflect the intent of the trial court. I disagree. It certainly follows that if the trial court assessed what was believed to be the

---

**6.** For this proposition, the *Banks* Court relied on language taken from Tex.Code Crim.Proc Ann art. 44.24 (repealed). A comparison of the pertinent language in Article 44.24 with the pertinent portions of Tex.R.App.P. 80 reveals that they are identical for all practical purposes.

maximum punishment—twenty years—then the trial court would also assess the correct maximum punishment—ten years—upon a remand. However, there is no evidence that the trial judge would make the lighter ten year sentence run concurrently with the murder conviction. The trial judge could order this sentence to run consecutively with the murder conviction. I would allow the trial judge this option. Therefore, instead of reforming, I would remand back to the trial court for resentencing.