In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00243-CR
______________________________


CHAD ANTHONY SPLAWN, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 6th Judicial District Court
Lamar County, Texas
Trial Court No. 19325


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N

            Life imprisonment, on each of the two charges


 of aggravated sexual assault of a child and
indecency with a child, resulted from Chad Anthony Splawn's single jury trial.


 None of Splawn's
ten points of error attacks the sufficiency of the evidence, so we discuss the evidence only as
necessary to address the points Splawn raises.
            We affirm Splawn's conviction on both charges, affirm the mandatory life sentence on the
aggravated sexual assault of a child conviction, and reverse his life sentence on the indecency with
a child conviction, remanding the indecency sentence to the trial court for a new hearing on
punishment. We reach that result because we hold that (A) the jury charge on range of punishment
contained egregiously harmful error and thus requires a new punishment hearing; but (B) denying
Splawn's motion for continuance was discretionary, (C) the State's notice regarding extraneous
offenses was timely and adequate, (D) the location of the trial was proper, (E) the State's notice of
enhancements  was  sufficient,  (F)  the  State  was  not  required  to  disclose  Splawn's  oral
statements,  (G)  denying  Splawn's  challenges  of  venirepersons  for  cause  was  not  error,  and
(H) denying Splawn's Batson challenges was not error.
A. Jury Charge on Range of Punishment Contained Egregiously Harmful Error
            In his first two points of error, Splawn contends (1) that the jury charge contained a harmfully
erroneous range of punishment for the indecency with a child conviction and (2) that denying his
motion for new trial asserting that error was, itself, error. Although the State argued at trial that
Splawn's punishment on the indecency conviction was properly enhanced under Tex. Pen. Code
Ann. § 12.42(b) (Vernon Supp. 2004–2005), the State now concedes this was incorrect because the
previous offense was not a final conviction, but had instead been subject to community supervision.


 
The jury was thus erroneously charged that the range of punishment for the indecency conviction was
five to ninety-nine years or life.
            The trial objection made to this portion of the charge is focused on a claim of a lack of notice
of the State's proposed enhancements and does not address the range of punishment error. Because
Splawn did not object to the range-of-punishment error, the error is reversible only if it caused him
egregious harm. See Cartwright v. State, 833 S.W.2d 134, 137 (Tex. Crim. App. 1992) (applying
Almanza analysis to error in charging range of punishment); see also Almanza v. State, 686 S.W.2d
157 (Tex. Crim. App. 1985). In determining whether egregious harm occurred, we review the error
in light of the entire jury charge, the state of the evidence, including the contested issues and the
weight of probative evidence, the argument of counsel, and all other relevant evidence revealed by
the record as a whole. Skinner v. State, 956 S.W.2d 532, 544 (Tex. Crim. App. 1997) (quoting 
Almanza, 686 S.W.2d at 171)).
            Errors resulting in egregious harm are those that affect the very basis of the case, deprive the
defendant of a valuable right, or vitally affect a defensive theory. Hutch v. State, 922 S.W.2d 166,
171 (Tex. Crim. App. 1996) (citing Almanza, 686 S.W.2d at 171); Washington v. State, 59 S.W.3d
260, 265 (Tex. App.—Texarkana 2001, pet. ref'd).
            In this case, the harm is obvious: Splawn was sentenced to life in prison for a charge on which
he could properly have been sentenced to a maximum of only twenty years.
            The State has suggested that we have the authority to reform the sentence from the maximum
under the erroneous range to the maximum under the correct, lesser range, arguing this would
obviously satisfy the intention of the jury. The general rule is that, if we have "the necessary data and
evidence before [the court] for reformation, the judgment and sentence may be reformed on appeal." 
Banks v. State, 708 S.W.2d 460 (Tex. Crim. App. 1986). The State directs us to an unpublished case
in which the court, without comment or analysis, reformed a maximum sentence under an incorrect
range to the maximum sentence under the lesser range. See Crain v. State, No. 14-97-00234-CR,
1998 Tex. App. LEXIS 4478 (Tex. App.—Houston [14th Dist.] July 23, 1998, no pet.) (not
designated for publication). Crain relied on McCray v. State, 876 S.W.2d 214, 217 (Tex.
App.—Beaumont 1994, no pet.), as authority. In McCray, the court, in a split opinion, concluded
with little analysis that, because the trial court had sentenced McCray to the highest level available
under the wrong range of punishment, it could reform that sentence to the highest level under the
lower range.
            Other courts have declined to apply that theory, and have reversed cases where a fact-finder
was provided with the wrong range of punishment and remanded the case to the trial court for a new
punishment hearing. See Bailey v. State, 7 S.W.3d 721, 725 (Tex. App.—Corpus Christi 1999),
vacated on other grounds, 38 S.W.3d 157 (Tex. Crim. App. 2001); State v. Rowan, 927 S.W.2d 116
(Tex. App.—Houston [1st Dist.] 1996, no pet.).
            We conclude sentence reformation is not appropriate here. In each of the cases allowing
reformation, only a single charge had been prosecuted. While we find reformation attractive when
there is a single charge—if a fact-finder found the maximum punishment to be the right one under
a high level felony, it would certainly find the maximum punishment proper under a lesser charge—it
is problematic here.
            This case is more complex because two different charges were involved, and the error may
well have influenced the jury's assessment of punishment on the indecency charge. The erroneous
range of punishment charged on the indecency conviction was communicated to the jury at the same
time as the accurate charge concerning the mandatory life sentence for the enhanced assault
conviction. The jury was charged that the indecency conviction was punishable with as much as a
life sentence, the mandatory sentence on the other enhanced conviction. If the two offenses were
worthy of equal maximum punishment, the jury could very easily have concluded they should, in fact,
be equally punished. Because, in fact, the range of punishment for indecency with a child is
substantially different from the life sentence mandated for aggravated sexual assault of a child,
enhanced—and because we cannot know how the jury might have assessed punishment on the
indecency conviction, if correctly charged on that offense—we remand the indecency sentence to the
trial court for another punishment hearing. See Flores v. State, 888 S.W.2d 187, 193 (Tex.
App.—Houston [1st Dist.] 1994, pet. ref'd).
B. Denying the Continuance Was Discretionary
            In his third point of error, Splawn contends the court committed reversible error by failing to
grant his first pretrial motion for continuance. The record shows that Splawn originally had appointed
counsel, who was evidently replaced with retained counsel November 19, 2002. After at least one
more delay from a March 24, 2003, trial setting, the retained counsel was allowed to withdraw July
3, 2003, and yet another attorney was appointed that same day. That attorney withdrew only six days
later, and current counsel, Jeff Starnes, was appointed to represent Splawn. Starnes filed the motion
for continuance August 14, 2003, and after a hearing August 19, the trial court denied the motion. 
Voir dire began September 8, and trial began the next day.
            The trial court's ruling on a motion for continuance is reviewed for abuse of discretion. 
Heiselbetz v. State, 906 S.W.2d 500, 511 (Tex. Crim. App. 1995); see Tex. Code Crim. Proc. Ann.
arts. 29.03, 29.06(6) (Vernon 1989). To establish an abuse of discretion, there must be a showing that
the defendant was actually prejudiced by the denial of his motion. Janecka v. State, 937 S.W.2d 456,
468 (Tex. Crim. App. 1996); Heiselbetz, 906 S.W.2d at 511.
            As pointed out by the State, Starnes had represented Splawn for five weeks before filing the
motion for continuance. At a hearing August 19, Starnes informed the trial court that he felt
unprepared because he had not received previous counsel's file until August 12. He also pointed out
that he was, at the same time, appointed counsel for another defendant whose trial was to begin
shortly in that same court, and that the defendant in the other case could not speak English, requiring
a translator for all communications. Counsel also pointed out that his pretrial motions had not yet
been ruled on, and that because of the situation he was not in a position to prepare adequately for trial.
            The trial court considered that, as well as the facts that Splawn had already been in jail for 332
days and that his trial had been already delayed at least once. The court then noted that the previous
delay had occurred because of the withdrawal of retained counsel on the eve of trial. After
articulating concerns about the delays and their causes, the court decreed that the Splawn case would
be tried first and that the other criminal matter would be delayed.
            The situation was further complicated when the State, at the last minute, provided Splawn
with a videotape as required by an extant discovery order. As a result, the trial court delayed trial yet
another ten days. Thus, trial actually began September 9. Considering the length of time that had
elapsed, the previous delay, and the last, ten-day delay of the trial, we cannot conclude the trial court
abused its discretion by concluding that no additional delays should be permitted and that trial should
commence as ordered. We find no error in the denial of the motion for continuance.
C. Notice Regarding Extraneous Offenses Was Timely and Adequate
            In points of error four and five, Splawn contends the trial court erred in ruling the State had
given timely and adequate notice of its intention to introduce evidence of extraneous offenses. On
July 21, Splawn filed requests directed both to the trial court and to the State referencing Article 37.07
of the Texas Code of Criminal Procedure and Rule 404 of the Texas Rules of Evidence, respectively,
asking for immediate notice. On July 24, Splawn filed a similar request under Article 38.37 of the
Texas Code of Criminal Procedure. Each of the three requests served both as a request to the State
and as a motion to the trial court asking for enforcement should the State be derelict in complying
with the request. The three motions were formally granted by the trial court August 25, 2003. 
            The State provided notice August 21, 2003, listing five extraneous alleged offenses it intended
to prove. All five were originally in the indictment and had been abandoned by the State. The August
21 list contains dates differing from those in the indictment. That list alleged that four of the five
offenses occurred June 6, 2002, in contrast to the indictment's May 6, 2003, date. Thus, on August
26, the State filed an amended list setting out the correct date.
            Voir dire in this case began September 8, 2003. Trial began the next day, September 9. We
have recently acknowledged the presumption that notice of intent to enhance, given more than ten
days before trial, is timely. McNatt v. State, No. 06-03-00112-CR, 2004 Tex. App. LEXIS 10242
(Tex. App.—Texarkana Nov. 17, 2004, pet. filed) (not designated for publication); Fairrow v. State,
112 S.W.3d 288, 295 (Tex. App.—Dallas 2003, no pet.). In this case, even if we calculate from the
later date, over ten days elapsed from the date of notice to the beginning of the trial. Notice was
timely.
            But Splawn also asserts that the State's notice regarding extraneous offenses was inadequate,
in that the State provided insufficient details of the extraneous offenses to allow him to adequately
prepare for trial. The two latest amended notices, filed August 26, 2003, each disclosed five alleged
offenses which had not resulted in a conviction.


 Each of the alleged offenses was disclosed by
including information on the name or classification of the alleged offense, the date of its alleged
commission, the county in which it was allegedly committed, its alleged victim, and finally a
reference that it was "separate (abandoned) count" followed by an associated number. Splawn
portrays that last reference as vague, but we disagree. The references clearly refer to numbered counts
of the indictment, which counts had been subsequently abandoned but which the State wished to use
as evidence at trial.



            Splawn specifically complains about the notices' confusion of dates and their lack of
specificity regarding how each alleged offense was committed. We address first the date component,
then the disclosure concerning how each alleged offense was committed.
            While there was admittedly some initial confusion in the trial court about the various alleged
offenses and their dates, that does not negate the fact that the latest amended notices of August 26,
2003, which we have already concluded were timely, clearly set out a date for each alleged offense. 
Therefore, the notices' dates of offense were sufficiently stated.
            The substance of the alleged offenses were adequately noticed, as well. In addition to the
other related information about each offense—omitted here—the notice specified the five alleged
offenses by name or classification of offense and by reference to specific counts of the indictment:
OFFENSE [A]:Indecency With A Child (by exposure)
. . .
STATUS OF CHARGE:charged as separate (abandoned) count six

 
. . .
OFFENSE [B]:Aggravated Sexual Assault of a Child- sexual contact ("cause
the anus of [J.H.] to contact the sexual organ of the
defendant")
. . .
STATUS OF CHARGE:charged as separate (abandoned) count two

 
. . .
OFFENSE [C]:Indecency With A Child (by exposure)
. . .
STATUS OF CHARGE:charged as separate (abandoned) count seven

 
. . .
OFFENSE [D]:Indecency With A Child (by contact)
. . .
STATUS OF CHARGE:charged as separate (abandoned) count five

 
. . .
OFFENSE [E]:Indecency With A Child (by contact)
. . .
STATUS OF CHARGE:charged as separate (abandoned) count three
 
            As to each noticed alleged offense, the named offense completely matched with the details
set out by the referenced count of the indictment: 



 


Offense
as Specified in the Notice

Indictment
Count
Referenced
in Notice


Offense as Described by
Referenced Indictment Count



A

Indecency With A Child (by
exposure)

count six

"on or about [May 6, 2002], . . . did then
and there, . . . expose [Splawn's] genitals,
knowing that [J.H.] . . . was present"



B

Aggravated Sexual Assault
of a Child-sexual contact
("cause the anus of [J.H.] to
contact the sexual organ of
the defendant")

count two

"on or about [May 6, 2002], . . . did then
and there, . . . cause the anus of [J.H.] . . . to
contact the sexual organ of" Splawn



C

Indecency With A Child (by
exposure)

count seven

"on or about [May 6, 2002], . . . did then
and there, . . . expose [Splawn's] genitals,
knowing that [J.H.] . . . was present"



D

Indecency With A Child (by
contact)

count five

"on or about [May 6, 2002], . . . did then
and there, . . . engage in sexual contact with
[J.H.] by touching the genitals of" J.H.



E

Indecency With A Child (by
contact)

count three

"on or about [August 15, 2002], . . . did
then and there, . . . engage in sexual contact
with [J.H.] by touching the genitals of" J.H.




 
That is ample detail to give Splawn notice of the alleged offenses.
            In asserting the inadequacy of notice, Splawn invokes three different notice requirements,
Article 37.07, Section 3(g), and Article 38.37, Section 3, of the Texas Code of Criminal Procedure,
and Rule 404(b) of the Texas Rules of Evidence. We address each in turn.
            Article 37.07, Section 3(g)—applicable to evidence introduced during the punishment phase
of trial—provides that notice of alleged offenses that have "not resulted in a final conviction in a court
of record or a probated or suspended sentence" must include the date and county of the occurrence
and the name of the alleged victim. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g) (Vernon Supp.
2004–2005). If referencing the indictment is proper, each of the noticed alleged offenses provides
the information required by Article 37.07, Section 3(g).



            Article 38.37, Section 3, of the Texas Code of Criminal Procedure and Rule 404(b) of the
Texas Rules of Evidence apply regarding evidence introduced during the guilt/innocence phase of
trial. Article 38.37, Section 3, provides that its required notice is to be given in the same manner as
notice under Texas Rule of Evidence 404(b). Tex. Code Crim. Proc. Ann. art. 38.37, § 3 (Vernon
Supp. 2004–2005); Tex. R. Evid. 404(b). Neither Article 38.37, Section 3, nor Rule 404(b), specify
what information must be included for a notice to be reasonable. But the purpose of at least Rule
404(b) is to avoid surprise. Cole v. State, 987 S.W.2d 893, 897 (Tex. App.—Fort Worth 1998, pet.
ref'd); Self v. State, 860 S.W.2d 261, 264 (Tex. App.—Fort Worth 1993, pet. ref'd); see Hayden v.
State, 66 S.W.3d 269, 271 (Tex. Crim. App. 2001). That is essentially the purpose of Article 37.07,
Section 3(g). Roman v. State, 986 S.W.2d 64, 67 (Tex. App.—Austin 1999, pet. ref'd); Nance v.
State, 946 S.W.2d 490, 493 (Tex. App.—Fort Worth 1997, pet. ref'd). We see no reason why the type
of information, or the level of detail in that information, required under any of the three provisions
to make a notice sufficient, should be appreciably different, except for the obvious difference
between, on one hand, a cause number and county and date of conviction, where there has been a
conviction, and, where an offense has not resulted in a conviction, "the date and county of the
occurrence and the name of the alleged victim," as required by Article 37.07, Section 3(g). See Tex.
Code Crim. Proc. Ann. art. 37.07, § 3(g).
            A notice's reference to other written material available to defense counsel is adequate notice,
if it is reasonably calculated to draw defense counsel's attention to an extraneous offense described
in the referenced material. See Roman, 986 S.W.2d at 67. The State's notice in this case, referring
Splawn's counsel to specified numbered counts in the indictment to provide the additional detail
therein disclosed, is sufficient notice, since the descriptions of the offenses as set out in the referenced
counts of the indictment contain sufficient information—notifying Splawn of the allegations that he
exposed his genitals in J.H.'s presence, that he caused his penis to contact J.H.'s anus, and that he
touched J.H.'s genitals. The notice as to each extraneous offense gave information, either in the
notice itself or by reference to a specific numbered count of the indictment, sufficient to allow Splawn
to prepare for trial. Notice was therefore not only timely, but adequate.
D. Location of Trial Was Proper
            Splawn's sixth point of error contends the trial court erred by holding the trial in the Police
Athletic League (PAL) building. The facility is a designated auxiliary court facility. See Tex. Loc.
Gov't Code Ann. § 292.004 (Vernon 1999). Splawn argues he was harmed because it is a location
where children and police intersect, because the PAL emblem on the outside of the building reflects
its purpose, and because groups of children typically were found in the hallways leading to the
courtroom and jury room. He provides no legal argument under this contention of error. We are not
convinced that error is shown by holding the trial in a sanctioned facility. Further, even if some error
could be said to exist, the existence of a symbol involving children does not of itself show harm under
these facts, and the existence of children in hallways is reflective of life in general. Under these facts,
no harm appears. We overrule this contention of error.
E. Notice of Enhancements Was Sufficient
            Splawn's seventh point of error asserts error in the enhancement charge's inclusion of an
enhancement not incorporated into the indictment. He contends that pleading enhancement
allegations in the indictment is not only the "traditional" method of achieving that purpose, but also
that it is implicitly required by the Texas Constitution. As pointed out by the State, this contention
was disposed of by the Texas Court of Criminal Appeals in Brooks v. State, 957 S.W.2d 30, 33 (Tex.
Crim. App. 1997), which held that, despite prior cases holding to the contrary, enhancements need
not be pled in the indictment, though noting that it is perhaps preferable to do so. This contention is
without merit.
F. Disclosing Splawn's Oral Statements Was Not Required
            In his eighth point of error, Splawn contends that the court erred by allowing the State to
introduce statements allegedly made by Splawn that were not turned over to defense counsel before
trial. The pretrial order entered by the court requires the State to make a list of materials available
"for inspection, photographing, photocopying and duplication," including all "confessions, statements
and res gestae statements purportedly made by the Defendant . . . ." The order requires to be turned
over to the defense, no later than 10:00 a.m. on the 28th day after entry of the order and on written
demand, as much of such information and materials as are under the control of the State.
            Splawn complains because the State, on the Friday before jury selection began, gave oral
notice of the existence of an oral admission by Splawn to the parents of J.H. Splawn argues that this
is a clear failure to comply with the order. We disagree. The order is not directed generally at all
potential testimony of witnesses, and does not require the State to create and then provide
documentation of their prospective oral testimony. Oral comments, not in written form in the State's
possession, uttered by Splawn to third parties, are not matters within the possession, custody, or
control of the State. The State cannot be faulted for failing to produce them. We overrule this
contention of error.
G. Denying Challenges of Venirepersons for Cause Was Not Error
            Splawn's ninth point of error attacks the trial court's denial of Splawn's challenges for cause
against venirepersons numbered six, twelve, forty-four, and forty-six, which he states forced him to
accept jurors that would otherwise have been unacceptable.
            When reviewing a trial court's decision to grant or deny a challenge for cause, we are to look
at the entire record to determine if there is sufficient evidence to support the court's ruling. Sells v.
State, 121 S.W.3d 748, 759 (Tex. Crim. App. 2003). We give great deference to the trial court's
decision because the trial judge is present to observe the demeanor of the venireperson and to listen
to the tone of voice. Id. We have been directed to give particular deference when the potential juror's
answers are vacillating, unclear, or contradictory. Feldman v. State, 71 S.W.3d 738, 744 (Tex. Crim.
App. 2002); King v. State, 29 S.W.3d 556, 568 (Tex. Crim. App. 2000). In our review, we look to
see if the trial court abused its discretion in denying a defendant's challenges for cause. Murphy v.
State, 112 S.W.3d 592, 600 (Tex. Crim. App. 2003).
            We address each challenged venireperson in turn.
            Juror six, Mr. Glenn, had written in a juror questionnaire that, if a person was not guilty, he
would take the stand to tell his side of the story, and stated that a person charged with molesting a
child should have to prove his innocence "without a doubt." In a more extended discussion, he went
on to explain that he could balance the evidence and would require the defense to put on evidence. 
However, when the State questioned him, he gave answers agreeing that a defendant did not have to
put on evidence, because the State had to prove guilt. On requestioning by defense counsel, he again
flip-flopped, agreeing that, regardless of what the law says, he believed an accused child molester
should have to prove his or her innocence. He then stated, however, that he could put that "in the
back of his head, gone." This is a situation where a venireperson vacillated, depending on which
counsel was questioning him. See Feldman, 71 S.W.3d at 744. In such a situation, we must defer
to the trial court's determination. 
            Juror twelve, Mr. Jones, a retired Texas Department of Public Safety officer who worked with
the officer in the sheriff's office who had investigated this case, said that he would perhaps tend to
give an officer's testimony the benefit of the doubt as opposed to someone he did not know and that
he knew the woman who had interviewed the child. He also stated that he would try his best to set
those factors aside and decide the case based on the evidence, and that he would follow the law as
stated by the judge. His statements are not of the type that remove this decision from the trial court's
discretion.
            Juror forty-four, Mr. White, stated that a child would not make a statement about molestation
unless  it  happened,  and  that  he  believed  the  majority  of  the  time  a  child  would  "tell  it  just
like it is . . . ." As with juror six, his answers about whether the defendant should testify in his own
defense vacillated. Yet he did state at one point that it would not influence him. We likewise hold
that the decision in this case was within the range of discretion available to the court.
            Juror forty-six, Mrs. Walters, stated on her questionnaire her belief that, if a child made such
an accusation, it was probably true, that a person accused of a bad crime should let his or her point
of view be heard, and that it would help if the defendant would testify. However, she also stated in
response to questions by the State that, if the State failed to prove its case, she would have to find the
defendant not guilty. And she finally settled on the statement that, if the defendant did not testify, she
would not hold it against him or her, and would decide the case solely based on the evidence she
heard. The court had the authority to sort out the contradictory and unclear answers of the
vernireperson in the exercise of its discretionary authority.
            We overrule this contention of error.
H. Denying Splawn's Batson Challenges Was Not Error
            Splawn's tenth and final point of error contends the trial court erred in overruling his Batson
challenges. His contention is based on a claim that the State had exercised its peremptory challenges
on the basis of gender. In each of the seven strikes exercised by the State, it struck a male. Under
the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, a litigant
may not exercise a peremptory challenge based on the juror's gender, J.E.B. v. Alabama ex. rel. T.B.,
511 U.S. 127 (1994), ethnicity, Hernandez v. New York, 500 U.S. 352 (1991), or race, Batson v.
Kentucky, 476 U.S. 79 (1986); Guzman v. State, 85 S.W.3d 242, 245 (Tex. Crim. App. 2002).
            In our review, we examine the genuineness instead of the reasonableness of the State's
asserted nonracial motive for peremptorily striking each veniremember. Gibson v. State, 144 S.W.3d
530, 534 (Tex. Crim. App. 2004). We are then to apply a "clearly erroneous" standard of appellate
review to a trial court's ruling on a Batson claim. This highly deferential standard is applied because
the trial court is in the best position to determine whether a prosecutor's facially race- or gender-neutral explanation for a peremptory strike is genuine. See Jasper v. State, 61 S.W.3d 413, 421–22
(Tex. Crim. App. 2001) (race).
            When the Batson challenge was raised, the State worked its way down the list and attempted
to provide a reason for each strike. Splawn complains on appeal about two of them, Steven Edward
Philip and Tommy Clyde Lane. The State's reasons for striking those two veniremembers, while not
terribly thorough, are gender neutral:
Steven Edward Philip, I really can't recall my reasons on that one. I struck him from
the previous case last week and basically from that same feeling, although I don't have
my records on that from last week. Tommy Clyde Lane was based on his answers. 
Let me look at it real quick. He indicated he had a bad check and I had a question on
whether or not that resulted in a conviction, and I forgot to ask him that when he was
up here. If I'm not mistaken, I think he also indicated that he knew one of the
witnesses and I wasn't sure how he knew him and it seemed like it might be negative.
 
            There is no requirement that the reasons for exercising a peremptory challenge be good ones. 
In fact, a peremptory challenge is, by definition, one exercised without giving a good reason. The
United States Constitution requires only that there be something articulated to show that the exercise
was not based on a constitutionally forbidden categorization, such as race, ethnic background, or
gender. That standard has been met. The State gave reasons, and they were not reasons that are
constitutionally prohibited. That is all that is required. There is no showing that the trial court's
ruling was clearly erroneous. We overrule this contention of error.
            We affirm both of Splawn's convictions, affirm the mandatory life sentence on the assault
conviction, and reverse and remand his sentence on the indecency conviction to the trial court for a
new punishment hearing.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice
 
Date Submitted:          September 13, 2004
Date Decided:             February 1, 2005
 
Publish