# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-24-00459-CR

**Zeb Olan Warner, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 33RD DISTRICT COURT OF BURNET COUNTY
### NO. 53795, THE HONORABLE EVAN C. STUBBS, JUDGE PRESIDING

## O P I N I O N

Zeb Olan Warner appeals four judgments of conviction: one for continuous sexual assault of a young child and three for aggravated assault of a child. He argues the trial court erred in admitting outcry testimony and extraneous-offense evidence without proper notice. We hold the outcry testimony was noticed and the extraneous-offense evidence, although it was not included in any prior notice, was admissible to rebut the defensive theory set out in the defense's opening statement. We will affirm.

## BACKGROUND

On March 23, 2022, Max's[1] mother Brittany got a call from his school. Max's seventh grade engineering teacher caught him using a school computer to look at pornography.

---

[1] The State at trial, and in the indictment, used a pseudonym selected by the Marble Falls Police Department of "MFPD 437." For readability we use an alias of "Max" to refer to the victim.

Brittany immediately called her then-husband Warner—who asked that she wait until he got home so they could speak to Max together. She did not because "red flags were all starting to go off" and she became suspicious of abuse. Over the past two years she found on Warner's phone "an overwhelming amount of gay romance novels with guy-on-guy pictures on the front" as well as, in September 2021, searches for gay pornography. Additionally, Warner had started making excuses to not have sex with her. Warner kept turning the surveillance cameras inside their apartment around so they could not record the room. Warner also volunteered that one day, when he stayed home with a sick Max, he "had crawled in bed with him in his underwear," and they cuddled. Finally, several times over the past year and a half, Warner spontaneously told her "that if our boys ever accused him of a sexual act that we would be done."

When Brittany questioned Max about the pornography at school, he explained that Warner had been showing him pornography and assaulting him since he was 10—initially teaching him how to masturbate and then touching his penis and having Max touch his. Brittany called the police. In the months leading up to the outcry, Brittany noticed that Max was having issues controlling his bowel movements. The problem continued after his outcry. Brittany questioned him about it, and Max told her "that whenever he could not climax that Zeb would put one to two fingers in his rectum to help him relax and massage the area."

An officer interviewed Warner on the day of the first outcry, March 23, 2022. Warner focused on Max's behavioral problems and discipline issues. Warner admitted he had talked to Max about masturbation but had done so in a "clinical" way. He denied ever showing Max pornography but admitted that Max had accidentally overheard some adult audiobook portions in his truck—when Bluetooth connected, but he would immediately switch it off. Warner

2

gave the officer his two cell phones and passwords. Warner left that night and never returned to the family apartment.

Warner was indicted for one count of continuous sexual assault of a young child (two or more acts of touching the genitals of Max between June 2021 and March 2022) and three counts of aggravated sexual assault of a child (penetrating the anus of Max in 2020, 2021, and 2022).

At the jury trial, teachers, Brittany, Max, law-enforcement officers, and several experts testified. An investigating officer testified about the data on Warner's iPhone 11. He noticed "the internet history stopped the day—I think it was the 22nd was the last date there was any internet history and the rest—everything prior to that was gone"—prior to March 22, 2022, there was no internet history at all. But he was able to retrieve some deleted data—activity between March 14, 2022, and March 21, 2022. Some deleted searches of interest included "bl anime on crunchyroll"; "twink riding anon cock"; and "bl anime on porn yaoi." The officer testified that "bl" stands for "boy love." Some deleted websites of interest included "Pornhub.com/gay/video"; "bl anime"; "bl anime channel"; "bl anime porn"; "animation dick riding"; "Tarzan Gay Porn—Pornhub.com"; and "your Lewd Friend Distracts you from Smash Bros [M4M Roleplay/BL][Uke Moans]—Pornhub.com."

Warner had not deleted searches from March 23, 2022, made after Max had been caught at school, for what to do about "kids with porn addiction."

Max testified consistently with his outcries, though he added that Warner would pin him down and masturbate until he ejaculated on his belly. Warner also forced oral sex on him—making him kneel and holding his head. He testified that Warner did not give him access to his phone if he wasn't there but that he did know Warner's password.

3

Warner's defense focused on Max—and suggested Max blamed Warner to deflect from his own pornography problem. The jury rejected Warner's defense and returned verdicts of guilty on all counts, and it sentenced Warner to 60 years' confinement on each count.

## ANALYSIS

### *Admission of Outcry Testimony Without Adequate Notice*

Warner argues that the trial court erred in admitting outcry testimony over his objection that the State's notice did not include the written summary of the outcries, as is required by the outcry statute. Tex. Code Crim. Proc. art. 38.072. Instead, "it only gave a passing reference to the preferred outcry witness's police statements." The State responds that Warner's testimony was properly admitted to rebut a defensive theory or as same transaction contextual evidence.

### *Applicable Law and Standard of Review*

Texas Code of Criminal Procedure article 38.072 creates a hearsay exception for the out-of-court statements of child abuse victims made to the first adult to whom the child reported the abuse—the "outcry witness." *Id.* art. 38.072, § 2(a). For a statement to be admissible under article 38.072, the court must find, in a hearing conducted outside the jury's presence, that the statement is reliable based on its time, content, and circumstances. *Koury v. State*, 684 S.W.3d 537, 545 (Tex. App.—Austin 2024, pet. ref'd). To invoke this exception, the party seeking to offer the otherwise qualifying statement of the child must satisfy three mandatory prerequisites at least 14 days before the proceeding begins: (A) notify the adverse party of its intention to offer the statement; (B) provide the adverse party with the name of the witness through whom it intends to offer the statement; and (C) provide the adverse party with a written summary of the statement. Tex. Code Crim. Proc. art. 38.072, § 2(b)(1). We review a trial court's admission

4

of testimony from an outcry witness under an abuse-of-discretion standard. *Gibson v. State*, 595 S.W.3d 321, 325 (Tex. App.—Austin 2020, no pet.). But if the State fails to comply with any of the notice requirements, the statement is not admissible over a hearsay objection. *Long v. State*, 800 S.W.2d 545, 547 (Tex. Crim. App. 1990).

*Application*

Here, the notice provided:

> In the trial of the above referenced cause of action the State of Texas will offer the outcry statement of the alleged victim, "Max", to the first person eighteen years of age or older which describes the offense alleged in this cause, namely: Brittany Warner. The outcry to Brittany Warner for "Max" is substantially contained in written summary in witness statements that Brittany Warner provided to the Marble Falls Police Department during the investigation of this case. Copies of these statements were shared with Defense Counsel on May 18, 2022.

Warner concedes he was in possession of the three statements Brittany had made to the police, dated March 23, 2022 (child described Warner showed him porn, touched his penis, masturbated in front of him); dated April 4, 2022 (child described Warner showed him furry and gay porn, used lube, grabbed his butt "to teach him to clinch his cheeks together to reach climax quicker); and dated April 27, 2022 (child described Warner penetrated his anus with fingers to "hit the spot and make him release"). But Warner, couching this is an issue of first impression, argues that notice must be within the "four corners" of a single pleading, like a charging instrument or an affidavit supporting a search warrant. He argues, "As allegations, they are the centerpiece of the notice requirement under Article 38.072. Accordingly, they should be treated in the same way as other charging instruments, and summarize the bad acts it intends to introduce as evidence at trial."

We disagree. For indictments, the rule is rooted in constitutional due process guarantees: the Texas Constitution requires that the offense be charged on the face of the

5

indictment itself, giving the defendant notice and the court jurisdiction without resort to outside materials. Tex. Const. arts. I, § 10, V, § 12(b). A particular charging instrument is not constitutionally sufficient unless the district court and the defendant can determine, from the face of the indictment, that the indictment intends to charge a felony or other offense for which a district court has jurisdiction. *Teal v. State*, 230 S.W.3d 172, 181 (Tex. Crim. App. 2007).

For search warrant affidavits, because probable cause must be "supported by oath or affirmation" under the Texas Constitution, only facts that have been sworn to by the affiant can properly ground the magistrate's probable cause determination. Tex. Const. art. I, § 9. The rule ensures that the magistrate functions as a neutral, independent check on law enforcement, evaluating a fixed written record. *See Martin v. State*, 620 S.W.3d 749, 766 n.24 (Tex. Crim. App. 2021).

No article of the constitution directly underpins the notice required in the outcry statute. We find the notice here more akin to that required under Rule 404(b), where the Texas Court of Criminal Appeals has held that reference to other documents may satisfy the rule's notice provision.

> Because the purpose of Rule 404(b) notice is to prevent surprise, we agree with the cases indicating that delivery to the defense of witness statements detailing extraneous offenses may, in an appropriate case, satisfy the notice requirements of Rule 404(b). The rule requires "reasonable" notice. Whether the delivery of witness statements constitutes reasonable notice depends in part on the timing of that delivery.

*Hayden v. State*, 66 S.W.3d 269, 272 (Tex. Crim. App. 2001).

Of course, the outcry statute defines the timing required for reasonable notice—"at least 14 days before the proceeding begins." Tex. Code Crim. Proc. art. 38.072, § 2(b)(1). And here, the witness statements had already been provided, on May 18, 2022, predating the outcry

notice filed on November 6, 2023. As the trial court acknowledged when overruling Warner's objection,

> [T]he crux of that statute is intended to require the State to provide some sort of written summary of what they expect the outcry witness to testify to because there's no requirement that an outcry witness write a written statement. And so I think from the standpoint of providing you notice prior to trial of at least a summary of what the witness is going to testify to, I think that's covered by what was provided.

We find that under the facts of this case the trial court did not abuse its discretion in finding the notice adequate. *Gibson*, 595 S.W.3d at 325; *cf. Splawn v. State*, 160 S.W.3d 103, 112 (Tex. App.—Texarkana 2005, pet. ref'd) (notice's reference to other written material available to defense counsel is adequate if reasonably calculated to draw defense counsel's attention to extraneous offense described in referenced material). We overrule Warner's first issue.

### *Admission of Extraneous Evidence Without Notice*

Warner argues that the trial court erred in admitting evidence that Warner searched for pornography involving young and submissive gay men because the State gave no notice of its intent to introduce that evidence. Warner timely objected under Rule 404(b), but the trial court overruled the objection and admitted the evidence.

#### *Applicable Law and Standard of Review*

Texas Rule of Evidence 404(b)(1) prohibits evidence of crimes, wrongs, or other acts to prove a person's character and show that on a particular occasion the person acted in conformity with that character. Tex. R. Evid. R. 404(a). Rule 404(b)(2) creates an exception permitting such evidence for other purposes—"such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"—and conditions

its admission in a criminal case's case-in-chief on the State providing "reasonable notice before trial" if the defendant makes a timely request under Rule 404. *Id.* R. 404(b)(2). The notice requirement under Rule 404(b)(2) applies only to evidence the State intends to introduce in its case-in-chief, and Texas courts have carved out a well-established exception when the defense affirmatively opens the door. *Dabney v. State*, 492 S.W.3d 309, 317 (Tex. Crim. App. 2016). The trial court's ruling on whether unnoticed extraneous-offense evidence was admissible to rebut a defensive theory should be upheld if it is within the zone of reasonable disagreement. *Id*. at 318.

*Application*

In its numerous notices of intention to use extraneous offenses, prior convictions, and bad acts, the State listed Warner showing Max pornography:

- On each alleged date in the indictment of the present case, in Burnet County, Texas, Defendant displayed pornography to [Max].

- On multiple dates between March 18, 2020 and March 18, 2022, Defendant showed pornography to [Max].

It did not, as Warner alleges here, give notice of its intent to introduce evidence regarding his own pornography searches on his cell phone in September 2021, while he and Brittany were on vacation without the boys. Outside the presence of the jury, the State argued that the evidence was admissible because "the issue of porn has been put at issue. The issue of [Max] having this huge porn problem has been put into issue and so an explanation of that I think is very appropriate."

The trial court apparently agreed and admitted Brittany's testimony over Warner's running objection about the lack of Rule 404(b) notice. Brittany testified that she looked at Warner's phone while he was taking a shower and found a search history for pornography; she

8

had his password, though she did not know if he knew that. She said she looked at it because he was "acting really weird on the phone."

Q. All right. You can answer. What was the exact search that you saw?

A. "Twink takes load up ass."

Q. Okay. Do you know what a "twink" is?

A. I ended up searching it whenever [I] got home, yes.

Q. And—

A. Searching the term, not the—

Q. Okay. I understand that. What is a "twink"?

A. It's a young gay male that's in the submissive role.

Q. Okay. Do you remember any other specific searches or was that—

A. That was repeated probably up to ten times in that web history.

Q. Okay. So the same search, "Twink takes load up ass"?

A. Yes.

Q. Ten times? Okay. Did you ever confront him about that?

A. I did not.

Q. Did you ever get back into his phone?

A. I did.

Q. Did you ever check his search history after that?

A. It was always cleared.

Warner argues that because the State's notices did not include allegations that he had searched for pornography on his cell phone, the trial court erred as a matter of law because, "Rule 404(b) literally conditions the admissibility of other-crimes evidence on the State's

9

compliance with the notice provision of Rule 404(b). *See Hernandez v. State*, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005). And, though a trial court can use its discretionary powers to grant a continuance to reduce surprise, it must use those powers to ensure compliance and not to excuse noncompliance. *Id.* But, as alluded to above, Rule 404(b) contains an exception to this notice requirement when the defense opens the door to such evidence by presenting a defensive theory that the State may rebut using extraneous-offense evidence. *Dabney*, 492 S.W.3d at 317.

The defense, in opening, focused on Max's pornography habit, stating that Max "won't stop looking at pornography" and "they've been fighting this fight for months, and months, and months." They had taken away his computer, but he would sneak onto their phones and computers. The defense's theory was that, after Max got in trouble at school for looking at pornography, Max accused Warner to deflect blame from his own addiction.

The defense also called into question Max's ability to interpret reality. "Now, let me tell you about [Max] . . . because y'all are going to be asked to weigh his credibility and I'm going to give you a brief synopsis of some of the things that this young man has been diagnosed with in the medical records for many years" including "auditory and visual hallucinations"; "schizophrenia"; "medical delusions, which are misinterpretations of reality. It's where he has false beliefs that are not based in reality"; "PTSD"; "psychosis, which is a mental condition where you cannot determine what is real versus what is not real"; "homicidal and [] suicidal tendencies." And "I don't [know] what you call it, but when he masturbates he defecates all over the floor."

And the defense called into question Brittany's ability to tell the truth. "I think that that is going—there's an attempt to blame Mr. Warner for that, which we, of course, strongly contest. And so all these allegations, all these allegations from the police officers' investigations, from the district attorney notes, they come from [Max] and very few other places. I think that the

10

mom, Brittany, is going to get up there and say, ['O]h, well, all these signs, all these signs.[']" Mind you, she is in the middle of a custody fight where Zeb is fighting for his little boy [Max's youngest brother]."

Warner's defense that Max sought to deflect blame for his own porn addiction and had lost touch with reality, opened the door to the admission of evidence that he, Warner, had previously searched for a specific type of pornography—that depicting young, submissive gay men—on his phone at a time when Max did not have access to his phone. Because Warner presented his defensive theory in opening statements, the trial court did not abuse its discretion in finding that the State could use extraneous-offense evidence to rebut this theory in its case-in-chief rather than waiting until the defense rested. *Id.* at 317–18. We overrule Warner's second issue.

## CONCLUSION

Having overruled Warner's two issues, we affirm the judgments of the trial court.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Kelly and Ellis

Affirmed

Filed: May 28, 2026

Publish

11