

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00147-CR

_____

LEE EDWARD MORRIS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th Judicial District Court
Lamar County, Texas
Trial Court No. 22425

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Narcotics investigators were able to make an audio recording of Lee Edward Morris selling cocaine to confidential informants, and Morris was convicted by a jury of two counts of delivery of more than one, but less than four, grams of a controlled substance.[1] The jury also found the second of those deliveries occurred within 1,000 feet of a playground (a drug-free zone). Punishment was enhanced by Morris's prior felony convictions for possession of a deadly weapon in a penal institution and engaging in organized criminal activity. Consequently, Morris was sentenced to fifty years' imprisonment on the first count and seventy-five years' imprisonment on the second count, to be served concurrently.

On appeal, Morris first complains that the trial court erred in overruling a *Batson*[2] challenge. We conclude the trial court did not clearly abuse its discretion in making its ruling. Morris next complains the trial court erred in seating the final jury panel, failing to require the court reporter to record a bench conference during voir dire, and in commenting on Morris's right not to testify and present mitigating evidence during punishment. Because Morris's trial counsel failed to preserve error on these points of error, they are overruled. Recognizing that preservation would likely prevent our review on certain points, Morris raised ineffective assistance of counsel in failing to object to the jury panel and the court's allegedly impermissible comments during

---

[1] Laboratory reports found 1.14 grams and 1.56 grams of cocaine were contained in the deliveries.

[2] *Batson v. Kentucky*, 476 U.S. 79 (1986).

punishment. However, Morris failed to sufficiently demonstrate counsel's ineffectiveness and we overrule his ineffective assistance of counsel claims.

## I. The Trial Court Did Not Err in Overruling Morris's *Batson* Challenge

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prevents the exercise of peremptory strikes based on a prospective juror's race. *Batson v. Kentucky*, 476 U.S. 79 (1986); *Guzman v. State*, 85 S.W.3d 242, 245 (Tex. Crim. App. 2002); *Splawn v. State*, 160 S.W.3d 103, 114 (Tex. App.—Texarkana 2005, pet. ref'd); *see* TEX. CODE CRIM. PROC. ANN. art. 35.21 (Vernon 2006).

Once a *Batson* challenge is raised, the trial court engages in a three-step inquiry. *Purkett v. Elem*, 514 U.S. 765, 767–68 (1995); *Ford v. State*, 1 S.W.3d 691, 693 (Tex. Crim. App. 1999); *Montgomery v. State*, 198 S.W.3d 67, 76 (Tex. App.—Fort Worth 2006, pet. ref'd). Under the first step, the person raising a *Batson* challenge is required to make a prima facie showing of racial discrimination. *Ford*, 1 S.W.3d at 693; *Montgomery*, 198 S.W.3d at 76. Once that prima facie showing is accomplished, the burden shifts to the State to present a racially neutral reason for the challenged jury strikes. *Ford*, 1 S.W.3d at 693; *Montgomery*, 198 S.W.3d at 76. Third, and finally, once the State's reason is proffered, the burden of persuasion shifts back and the person raising the challenge must then convince the court that the reason given by the State was not race-neutral, and was merely pretext for concealing discrimination. *Ford*, 1 S.W.3d at 693 (citing *Purkett*, 514 U.S. at 767–68).

We review the evidence relevant to the *Batson* challenge in the light most favorable to the trial court's ruling. *Cantu v. State*, 842 S.W.2d 667, 689 (Tex. Crim. App. 1992); *Roberts v. State*, 963 S.W.2d 894, 899 (Tex. App.—Texarkana 1998, no pet.). A high degree of deference is given to the trial court, who is in the best position to determine if the State's facially neutral explanation for a peremptory strike is genuine. *Splawn*, 160 S.W.3d at 114 (citing *Jasper v. State*, 61 S.W.3d 413, 421–22 (Tex. Crim. App. 2001)). Thus, a "clearly erroneous" standard of review is applied to the trial court's decision to overrule a *Batson* challenge. *Hernandez v. New York*, 500 U.S. 352, 369 (1991); *Splawn*, 160 S.W.3d at 114 (citing *Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004)). A finding is clearly erroneous where the reviewing court "is left with the definite and firm conviction that the trial court committed a mistake." *Roberts*, 963 S.W.2d at 899.

During voir dire, the State individually elicited veniremember responses to the following inquiry:

> There are a number of theories about why jurors do what they do, and jurors punish and return the verdicts that they return, because in the same case, same set of facts, two separate juries will do two completely different things.
> So people who study this sort of thing have found three common themes among jurors, why jurors set the sentences that they do. Some jurors will return a sentence because they want to keep other people from committing the same or similar crimes [punishment theory one]; . . . .
> Some jurors favor number two, rehabilitation; we're going to try to help the person who has committed this crime, we're going to give them probation, or we're going to recommend that they go to a mental hospital, or whatever the case might be.

4

> . . . some jurors out there just want to punish that defendant for what he's done, to send a message to him [punishment theory three] . . . .
>
> . . . . I want to find out from you which of these theories you subscribe to.

After the State presented its list of peremptory strikes, Morris's counsel objected that the State improperly struck Sarah Williams (juror number eight) and Elane Hill (juror number eleven) from the jury based on their African-American race. The State proffered this race-neutral reason for striking Williams and Hill:

> The Court may recall that I asked the jury panel, as a whole, their particular theories on punishment, whether it was the deterrence, rehabilitation or punishment for punishment's sake. I asked the jurors to give me their number, one, two or three, whichever one they chose.
>
> Two was rehabilitation. If a juror felt that rehabilitation would be the guiding principle or the theory behind which he would set punishment, I wrote down by that juror's name, two. I went back to the jury room, and in counting up the numbers, I discovered that 12 potential jurors had identified rehabilitation as the theory behind how they would assess punishment, or the criteria they would use to assess punishment in this case.
>
> I think [Morris's counsel] would agree with me, this is a punishment case. Guilt is not the real issue here. Both transactions were captured on videotapes. The real issue in this case is going to be what kind of sentence is the defendant going to receive.
>
> All of the jurors that answered, rehabilitation, I struck. There were white jurors, there were black jurors, there were some jurors that, quite frankly, I would like to have kept. I struck every juror, white, black, Hispanic, Indian, Asian, whoever they were, I struck every single juror that answered rehabilitation as their punishment theory.

Indeed, each of the veniremembers peremptorily struck by the State (including Williams and Hill) responded affirmatively that they believed in the theory of punishment number two posited by the State—rehabilitation. The State pointed out that it exhausted its peremptory strikes and would

5

have struck even more members of the jury pool who believed in the second theory of punishment if it had additional strikes. Once the State's reasoning was offered, and it was confirmed that all the veniremembers struck by the State responded they believed in the second theory, Morris's counsel failed to argue that the State's reasoning was pretext for discrimination. Counsel merely stated he was "making an objection for the record."

In *Montgomery* and *Victor*, our sister courts found that "a veniremember's belief in rehabilitation as the primary goal of punishment is a race-neutral reason for the exercise of a peremptory challenge." *Montgomery*, 198 S.W.3d at 76; *Victor v. State*, 995 S.W.2d 216, 222 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). We conclude that the trial court's finding (i.e., that the State proffered a sufficient race-neutral reason for striking Williams and Hill and that Morris failed to meet his burden of persuasion to demonstrate otherwise) was not clearly erroneous. *See Splawn*, 160 S.W.3d at 115.

In his appellate brief, Morris additionally argues that the State struck jurors thirty-one and thirty-two, but did not strike juror number thirty, who also subscribed to the rehabilitation punishment theory. However, this challenge to the State's race-neutral reason was never presented to the trial court.[3] Because the trial court was thus unable to consider this argument, it is not preserved for our consideration.

---

[3] A "defendant who raises a *Batson* claim at trial forfeits his opportunity to complain on appeal about what his response to the State's race neutral reasons would have been when he fails to timely present his evidence in rebuttal of the

Morris's first point of error is overruled.

## II. Morris Did Not Preserve Remaining Claims of Trial Court Error

### A. Seating a Peremptorily Struck Juror on the Jury Panel

Morris's counsel peremptorily struck "Ricky Bond" and listed him as juror number "36." A review of the jury list reveals that Bond was actually juror number 35 and that juror number 36 was Gary Reed, who was not chosen to be on the jury and whose name did not appear on either strike list. Morris argues on appeal that the trial court erred in allowing Bond to sit on the jury and also erred because "Reed should be juror #9 instead of Bond."

"It is well settled that it is the responsibility of the parties to assure that the jury impaneled does not include a juror that has been struck." *Jackson v. State*, 826 S.W.2d 751, 752 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd); *see also Miller v. State*, 692 S.W.2d 88, 93 n.10 (Tex. Crim. App. 1985). The party must object before the panel is sworn, or else show that the juror was otherwise disqualified because of prejudice toward the appellant. *Jackson*, 826 S.W.2d at 752; *Miller*, 692 S.W.2d at 93 n.10. No objection was lodged to Bond being seated on the jury as opposed to Reed, and Morris's counsel affirmatively stated he did not contest any jury member's qualification to sit on the panel.

---

State's race neutral reasons." *Hill v. State*, No. 10-03-00281-CR, 2005 WL 170552, at *1 (Tex. App.—Waco Jan. 26, 2005, pet. ref'd) (mem. op., not designated for publication).

## B.    Failure of Court Reporter to Record Bench Conference

Morris next complains that the trial court denied him the right of review by "failing to make the services of the court reporter available" during a bench conference.[4]    It is uncontested that the court reporter was available and present in the courtroom during the bench conference, but failed to record it.   Morris cites this Court to the rule stating that a court reporter has a duty to record all proceedings unless expressly waived.   TEX. R. APP. P. 13.1.   We have previously held that this Rule does not excuse counsel from the requirement to preserve error through an objection if the court reporter fails to make a record as required.   *Rittenhouse v. Sabine Valley Ctr. Found., Inc.*, 161 S.W.3d 157, 161 (Tex. App.—Texarkana 2005, no pet.); *see also Jones v. State*, 942 S.W.2d 1, 2 (Tex. Crim. App. 1997) (en banc) (objection required to preserve error stemming from failure to transcribe voir dire proceedings)[5]; *Valle v. State*, 109 S.W.3d 500, 508–09 (Tex. Crim. App. 2003) (holding objection required to preserve error if bench conference not recorded). Counsel for Morris failed to object to the failure of the court reporter to transcribe the bench conference.

---

[4]Morris concedes that the trial court was taking up challenges for cause during the bench conference, a portion of which was recorded by the reporter.   The *Batson* challenge was made after the bench conference, which was fully recorded and preserved for our review.   Since Morris has not proffered a point of error dealing with challenges for cause, we have not been shown how the omitted portion of the bench conference would hinder our review of this appeal.

[5]Morris challenges that Rule 34.6 of the Texas Rules of Appellate Procedure entitles him to a new trial if a significant portion of the reporter's record is lost or destroyed.   TEX. R. APP. P. 34.6.   As *Jones* discusses, since the record was never created, this Rule will not apply.   942 S.W.2d 1, 2.

8

**C.     Comment on Morris's Right Not to Testify and Present Mitigating Evidence**

Immediately after the enhancement paragraphs were read during the punishment phase of the trial, the court advised Morris "that you have the right to remain silent during the punishment phase of the trial and to present evidence of mitigation at punishment.   Do you understand that?," to which Morris replied "Yes, sir."   In his appellate brief, Morris interprets this exchange as an improper comment on his right not to testify and present mitigating evidence in front of the jury. Again, counsel failed to object to the trial court's comments, perhaps because he felt the court's comments were merely an admonishment, rather than improper comments.

**D.     Lack of Preservation Prevents Our Review**

In order to preserve these points of error for our review, Morris was required to present a timely, specific objection to the trial court and secure an adverse ruling.   TEX. R. APP. P. 33.1; *Fox v. State*, 175 S.W.3d 475, 481 (Tex. App.—Texarkana 2005, pet. ref'd).   Because his counsel failed to object to the above alleged errors regarding the failure of the court reporter to transcribe the bench conference and the comments by the trial court, they were unpreserved and nothing is presented for our review.   Thus, they are overruled.

**III.    The Record Does Not Demonstrate that Morris's Counsel Was Ineffective**

In his final point, Morris argues that his counsel was ineffective for failing to object to Bond's placement on the jury, Reed's exclusion from the jury, and the trial court's alleged improper comments on Morris's failure to testify and present mitigating evidence.

9

### A.    Standard of Review

Morris's allegations of his counsel's ineffectiveness must be firmly founded in the record. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Wallace v. State*, 75 S.W.3d 576, 589 (Tex. App.—Texarkana 2002), *aff'd*, 106 S.W.3d 103 (Tex. Crim. App. 2003). "Trial counsel should ordinarily be afforded an opportunity to explain his actions before" we find the attorney's performance was ineffective. *Goodspeed*, 187 S.W.3d at 392; *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003); *Fox*, 175 S.W.3d at 485–86. Absent such opportunity, we will not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392; *Fox*, 175 S.W.3d at 486. For this reason, direct appeal is usually an inadequate vehicle for raising such a claim because the record is generally undeveloped. *Thompson*, 9 S.W.3d at 813–14; *Fox*, 175 S.W.3d at 485.

We evaluate Morris's ineffective assistance of counsel claims using the two-part *Strickland* test formulated by the United States Supreme Court, which requires a showing of both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Thompson*, 9 S.W.3d at 812; *Fox*, 175 S.W.3d at 485. Under the first prong of the *Strickland* test, Morris must show that his counsel's representation fell below an objective standard of reasonableness. *Fox*, 175 S.W.3d at 485 (citing *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000)). There is a strong presumption that counsel's conduct fell within the

10

wide range of reasonable professional assistance and that the challenged action could be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); *Tong*, 25 S.W.3d at 712. Therefore, we will not second guess the strategy of Morris's counsel through hindsight. *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); *Hall v. State*, 161 S.W.3d 142, 152 (Tex. App.—Texarkana 2005, pet. ref'd). In this case, since the record is silent as to why counsel failed to object to Bond's inclusion on the jury, Reed's exclusion from the jury, and the court's allegedly improper comments on Morris's failure to testify and present mitigating evidence, we will assume it was due to any strategic motivation that can be imagined. *Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); *Garcia v. State*, 57 S.W.3d 436, 441 (Tex. Crim. App. 2001); *Fox*, 175 S.W.3d at 485–86.

The second *Strickland* prong requires a showing that the deficient performance prejudiced the defense to the degree that there is a reasonable probability that, but for the attorney's deficiency, the result of the trial would have been different. *Strickland*, 466 U.S. at 689; *Tong*, 25 S.W.3d at 712. A reasonable probability "is a probability sufficient to undermine confidence in the outcome." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). Failure to satisfy either prong of the *Strickland* test is fatal. *Ex parte Martinez*, 195 S.W.3d 713, 730 (Tex. Crim. App. 2006).

## B.  Failure to Object to Jury Selection

There is no record explaining counsel's reasons for failing to object to Bond's inclusion and Reed's exclusion from the jury panel.  Counsel's peremptory strike lists Bond's name, but incorrectly cites his juror number as Reed's juror number.  Thus, it is possible counsel's intention was to strike Reed and keep Bond on the jury panel.  Absent a record demonstrating otherwise, we apply the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  *Strickland*, 466 U.S. at 689; *White*, 160 S.W.3d at 51; *Tong*, 25 S.W.3d at 712.

Morris attempts to meet the second *Strickland* prong by arguing that since Reed believed in rehabilitation punishment theory (second theory), and Bond believed in punishing a defendant to send a message (third theory), his sentence would have been less severe if Reed had been seated on the jury instead of Bond.  Yet, the makeup of the final jury consisted of four jurors who believed in the third theory of punishment and two jurors who believed in the second theory of punishment. Placing Reed on the jury would have led to an equal amount of jurors believing in the second and third punishment theories.  In any event, the remaining majority of jurors believed in the first theory of punishment—prevention of further crime.  Given the evidence in this case and the fact that jurors representing all three theories of punishment rendered a unanimous verdict as to sentencing as instructed by the trial court's charge, Morris cannot demonstrate with reasonable probability that the result of the trial would have been different absent his counsel's alleged error.

12

**C.  Failure to Object to Trial Court's Allegedly Improper Comment on Failure to Testify and Present Mitigating Evidence**

Finally, Morris argues that his counsel was ineffective for having failed to lodge an objection to the trial court's instruction to Morris in the presence of the jury that he had the right to remain silent and the right to present mitigating evidence.   It is possible that counsel believed that the court's comments favorably aided in explaining to the jury that Morris was neither required to testify nor present mitigating evidence.   Alternatively, even if counsel believed the trial court's comment was damaging, counsel may have taken the position that to lodge an objection would have served little purpose except to draw the jury's attention to Morris's failure to testify or the lack of mitigating evidence, thereby magnifying its significance.   Again, absent a record containing counsel's explanations, we will not find deficient performance since the failure to object in this circumstance was not "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392; *Fox*, 175 S.W.3d at 486.

Moreover, the jury charge instructed the jury not to consider Morris's failure to testify and to only consider facts in evidence.   Absent evidence to the contrary, we will presume that the jury followed the trial court's instructions in the charge.   *See Reynolds v. State*, 227 S.W.3d 355, 367 (Tex. App.—Texarkana 2007, no pet.).   Thus, because the jury presumably followed the charge, Morris is unable to demonstrate the result of the trial would have been different absent trial counsel's alleged error.

13

**IV.     Conclusion**

We affirm the judgment of the trial court.


Bailey C. Moseley
Justice

Date Submitted:     April 14, 2010
Date Decided:       April 23, 2010

Do Not Publish