



# MEMORANDUM OPINION

No. 04-09-00323-CR

Roger **RAMIREZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CR-4291
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:    Karen Angelini, Justice
Phylis J. Speedlin, Justice
Rebecca Simmons, Justice

Delivered and Filed:  November 24, 2010

REVERSED IN PART, MODIFIED IN PART, AFFIRMED IN PART

This appeal arises from Appellant Roger Ramirez's conviction for felony murder, manslaughter, and failure to stop and render aid following an accident resulting in the death of Ryan Stephens.  Based on Ramirez's plea of true to the two enhancement allegations, Ramirez was sentenced to life imprisonment in the Institutional Division of the Texas Department of Criminal Justice, and fined $10,000.00 for each count.  On appeal, Ramirez argues: (1) the trial court's imposition of a fine is not authorized by the habitual felony offender statute; (2) the trial

court violated Ramirez's right to be free from double jeopardy in entering a judgment convicting Ramirez of felony murder and manslaughter; (3) the trial court erred in admitting the graphic photograph depicting Mr. Stephens' injuries; and (4) the evidence is factually insufficient to support the jury's verdict. We reverse the trial court's judgment in part, modify the trial court's judgment in part, and affirm the trial court's judgment in part.

## FACTUAL BACKGROUND

On November 17, 2006, Ryan Stephens was trimming trees at a residence on Cadillac Drive when he was struck and killed by a Dodge pickup truck. At the time of the accident, Mr. Stephens was sharpening chainsaws and his body was severely disfigured in the accident. The Dodge pickup that struck Mr. Stephens subsequently ran into a tree, backed away, and sped down the road less than a mile before being abandoned. Two of Mr. Stephens' employees were also at the residence at the time of the incident, but neither employee could identify the driver of the vehicle. The truck in question had been reported stolen earlier that same morning from a motel parking lot. A video of the theft showed two individuals stealing the truck, but lacked any detail.

Mr. Stephens' employee, Roberto Carlos Sierra Luna, described the assailant as a Hispanic man with a mustache. Another witness testified that she saw the truck traveling at an excessive speed, but could not identify anyone in the vehicle. An additional witness a few blocks away described a man running from the direction of Cadillac Drive as a Hispanic male, 5'6" or 5'7", in his late thirties or forties, with a beard with gray spots. A video obtained from a nearby local business could not provide a clear view of the individual in question.

The officers arriving at the accident scene collected several items for testing, including a stain from the deployed airbag. Subsequent DNA tests consistent with Ramirez's DNA profile,

along with a Crimestoppers tip, led officers to conclude that Ramirez was the driver of the truck that struck Mr. Stephens. During questioning and at trial, Ramirez admitted to being involved in the theft of the Dodge truck and that he was, in fact, in the vehicle during the early morning hours on the day in question. Ramirez further relayed that he was using drugs while sitting in the truck and that the airbag had deployed prior to his being in the truck.

Ramirez testified in his own defense, adamantly denying that he was driving the truck when Mr. Stephens was killed. To support his allegations, Ramirez offered testimony supported by several defense witnesses that he was reporting to his parole officer at the time of the accident. The State, however, also presented witnesses, including two parole officers, that testified that Ramirez did not report on the day of the accident, but instead, reported three days later.

The jury charge alleged that Ramirez committed felony murder, manslaughter, unauthorized use of a motor vehicle, and failure to stop and render aid. The jury returned a guilty verdict on all counts. The trial court set aside the jury's finding of guilt on the unauthorized use of a motor vehicle and entered a judgment finding Ramirez guilty of felony murder, manslaughter, and failure to stop and render aid. This appeal ensued.

### DOUBLE JEOPARDY & ILLEGAL FINE

The State concedes that the conviction and life sentence for both felony murder and manslaughter violate Ramirez's rights against double jeopardy and that the manslaughter conviction should be vacated, and the felony murder conviction upheld. *See Ervin v. State*, 991 S.W.2d 804, 816–17 (Tex. Crim. App. 1999); *Bigon v. State*, 252 S.W.3d 360, 369–70 (Tex. Crim. App. 2008); (prohibiting conviction for felony murder and manslaughter stemming from the same conduct and same offense); *Ex parte Cavazos*, 203 S.W.3d 333, 338–39 (Tex. Crim.

App. 2006) (authorizing appellate courts to affirm the conviction on the most serious offense and vacate the other conviction).

Additionally, the State concedes that the habitual felony offender statute does not authorize the assessment of a fine. *See* TEX. PENAL CODE ANN. § 12.42(d) (West 2009). Ramirez, however, argues that the assessment of a fine requires this court to remand the matter for a new sentencing hearing. The State argues that the judgment should be reformed because the imposition of a fine was the only penalty outside the proper punishment range. This Court has the power to modify incorrect judgments when we have the necessary data and information to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *see, e.g.*, *McCray v. State*, 876 S.W.2d 214, 217 (Tex. App.—Beaumont 1994, no pet.) (modifying a judgment containing a sentence greater than the applicable range of punishment). Accordingly, we modify the trial court's judgment to delete the $10,000.00 fine for each conviction.

**ADMISSION OF THE PHOTOGRAPH**

During its case-in-chief, the State offered a photograph, taken immediately after the accident, depicting the severe damage to Mr. Stephens' body. Ramirez argues that the probative value of the evidence was low compared to the prejudicial effect of the photograph. *See* TEX. R. EVID. 403.

**A.  Standard of Review**

A trial court's ruling on the admission of evidence is reviewed for an abuse of discretion. *See State v. Mechler*, 153 S.W.3d 435, 438–39 (Tex. Crim. App. 2005). A trial court abuses its discretion when it acts arbitrarily or unreasonably, and without reference to guiding rules and principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). An appellate

court views the evidence in the light most favorable to the trial court's ruling and affords almost total deference to the trial court's findings of fact that are supported by the record. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). This Court will not reverse a trial court's findings so long as the ruling is "within the zone of reasonable disagreement." *Mechler*, 153 S.W.3d at 440.

## B. Texas Rule of Evidence 403

Texas Rule of Evidence 403 permits the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403. A review under Rule 403 requires a trial court to consider: the probative value of the evidence; the evidence's potential to impress the jury in some irrational, yet indelible way; the time required to develop the evidence; and the proponent's need for the evidence. *Id.*; *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). More specifically, with regard to photographs, several additional factors are considered: the number, size, gruesome nature, and the color of the photographs; the ability of the State to prove the evidence by other means; and the circumstances unique to the individual case. *Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex. Crim. App. 1992); *see also Davis v. State*, 313 S.W.3d 317, 330 (Tex. Crim. App. 2010); *Erazo v. State*, 144 S.W.3d 487, 489–90 (Tex. Crim. App. 2006). As the *Erazo* Court explained, "If there are elements of a photograph that are genuinely helpful to the jury in making its decision, the photograph is inadmissible only if the emotional and prejudicial aspects substantially outweigh the helpful aspects." *Erazo*, 144 S.W.3d at 491–92.

## C. Analysis

There is no dispute that only one photograph is in question. It was the only photograph used to identify Mr. Stephens at the scene, and the photograph portrays a color depiction of the

very violent end to Mr. Stephens' life. *See Narvaiz*, 840 S.W.2d at 429. As such, there is little question that the photograph would have had a serious impact on the jury. *See id.* Ramirez argues that the photograph had little, if any, probative value because the only issue before the jury was whether Ramirez was driving the Dodge truck when it struck Mr. Stephens.

We disagree. The trial court could have reasonably determined that the photograph was probative of Mr. Stephens' identity and the manner in which he was killed. The trial court could have also reasonably determined that the photograph was probative of an essential element of the crime of failure to stop and render aid. Failure to stop and render aid requires the State to prove that the defendant knew the circumstances surrounding his conduct. *See* TEX. TRANSP. CODE ANN. § 550.021 (West 2009); *St. Clair v. State*, 26 S.W.3d 89, 98 (Tex. App.—Waco 2000, pet. ref'd). More specifically, the State was required to prove that Ramirez knew that an accident had occurred, and that a victim suffering an injury required him to "stop, return or remain" at the scene. *See Huffman v. State*, 267 S.W.3d 902, 909 (Tex. Crim. App. 2008). Thus, the picture was probative of the elements upon which the jury was called to decide.

Moreover, the trial court could have reasonably determined that the risk of undue prejudice was low. The photograph was not enlarged or viewed on a video screen in open court. The photograph was not a close up of the injuries, but instead a representation of how Mr. Stephens would have appeared to someone standing a few feet away from the accident scene. Finally, the five-inch by eight-inch photograph was offered to the jury, and individually passed to the jurors, allowing each juror to view the picture as long as each felt necessary. We cannot conclude that it was outside the zone of reasonable disagreement for the trial court to admit the photograph. Thus, the trial court did not abuse its discretion. *See* TEX. R. EVID. 403; *Mechler*, 153 S.W.3d at 438–39.

## FACTUAL SUFFICIENCY

Ramirez next argues that the evidence is factually insufficient to support the jury's finding of guilt. The question of factual sufficiency in the present case focuses on the identification of Ramirez as the driver of the vehicle that struck Mr. Stephens. The State's case relies on DNA evidence, witness testimony, alibi witness testimony, and circumstantial evidence.

### A. Standard of Review

Recently, the Court of Criminal Appeals has determined that there is no meaningful distinction between a legal-sufficiency standard under *Jackson v. Virginia*, 443 U.S. 307 (1979), and a factual sufficiency review under *Clewis v. State,* 922 S.W.2d 126 (Tex. Crim. App. 1996). We, therefore, apply the single legal sufficiency standard of review as set forth in *Jackson v. Virginia*, which is whether, considering all the evidence in the light most favorable to the verdict, was the jury rationally justified in finding guilt beyond a reasonable doubt. *Id*. at 319. The standard of review is the same whether the evidence is direct, circumstantial, or both. *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).

### B. Evidence of Identity

Ramirez alleges that the evidence is insufficient based on lack of identification. More specifically, Ramirez claims the State's case is based on indistinct descriptions of the truck's driver, an unclear video, an anonymous caller providing the name "Ramirez," and DNA evidence that Ramirez was in the truck prior to the accident. Ramirez argues that his alibi witness and the State's failure to prove that he was injured make the jury's verdict insufficiently supported by the evidence. Although the State relied entirely on circumstantial evidence, we note that the identity of the perpetrator may be proven by either direct or circumstantial evidence. *See Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986).

*1. DNA Evidence*

After collecting evidence swatches from the deployed airbag in the truck, the sample was tested by Erin Reat, the Quality Assurance Manager for the Bexar County Criminal Investigation Laboratory. In January of 2007, Reat developed a genetic profile from the swatch removed from the airbag and, in March of 2007, the profile was compared to DNA taken from Ramirez. Reat testified that Ramirez's DNA profile "was expected to be found once in a population of one quadrillion people." Reat opined that "based on the rarity of [Ramirez's] sample," that the DNA collected from the airbag "originated with Roger Ramirez."

Ramirez did not contest the DNA results, but did contest the circumstances surrounding how his DNA came to be on the airbag. San Antonio Police Detective Adam Zeldes testified that based on (1) the undisturbed powder residue on the dashboard of the truck, and (2) the manner in which the airbag was draped over the steering wheel making the vehicle difficult to maneuver, he believed that the evidence supported that the truck's airbag had "recently deployed." In response, Ramirez explained that he was in the truck in the late evening to early morning hours snorting methamphetamines and that he may have coughed or spit on the airbag. He was adamant, however, that the airbag had deployed when the two men that stole the vehicle hit the steering wheel with a sledgehammer. Yet, Detective Zeldes opined that the airbag would have only deployed from an external force on the vehicle, not an impact on the steering wheel itself. Moreover, Sergeant Mark Hubbard testified that contrary to Ramirez's allegations, there were no signs that the steering wheel was hit with a sledgehammer.

Furthermore, Reat testified that the soiling on the airbag appeared "shaped somewhat as a face" and that the stain was consistent with a mouth coming into contact with the airbag. Other witnesses provided additional support for the State's case. Mr. Luna, one of Stephens'

employees, testified that he was approximately six feet away from the truck at the time of the accident. He testified that he ran toward the truck immediately after impact, and saw the airbag inflated; this suggests that the airbag deployed as a result of the impact with Mr. Stephens.

*2. Alibi*

Ramirez next argues that the descriptions provided by the State's witnesses were vague and inconclusive. More specifically, no one identified Ramirez as the driver of the vehicle. Kay Spears testified that as she was driving down Cadillac Drive, she looked up and saw a truck approaching her at an extremely high rate of speed. She further explained she was able to see only the truck, and could not recognize anyone in the vehicle or even testify as to how many people were in the vehicle. Additionally, a video collected from a nearby gas station did not provide a clear picture of the suspect.

Furthermore, Ramirez testified that he was not on Cadillac Drive at the time of the accident, but was instead on Perrin Beitel Road reporting to his parole officer. Ramirez testified that Monica Martinez picked him up and that they drove to the parole office. According to Ramirez, when he arrived at the parole office, he was informed that his parole officer, John Rangel, was not at the office. Ramirez testified that a different parole officer told him that he would have to reschedule his appointment for Monday, November 20. He also testified that he was at the parole office for about fifteen to twenty minutes and then he left. Denise Vasquez, Ramirez's niece, corroborated Ramirez's testimony and relayed that she followed Ramirez to the parole office where she waited for approximately thirty to forty-five minutes, and that Ramirez was in the parole office the entire time.

Several parole officers, however, contradicted this testimony. Julie Morales and John Rangel both testified that Ramirez did not report as directed on November 17, the day in

question, but instead reported on Monday, November 20. The sign-in sheet, which did not include Ramirez's signature, was admitted into evidence. More specifically, Rangel reported that he was, in fact, at the parole office on November 17 from 7:30 a.m. to 10:30 a.m. and reiterated that Ramirez did not appear on that day. In response, Ramirez explained that he was required to report weekly, and that if he had not appeared on November 17, a rapid response notice would have been issued, but yet no notice was issued. On redirect, though, Morales explained that because November 17 was a Friday, the rapid response would not have issued before Monday. Thus, because Ramirez reported on Monday, no rapid response notice was issued.

Ramirez further testified that the fact he had a "scheduled appointment" on November 20 was evidence that he was at the parole office on November 17. More specifically, Ramirez argued that the "scheduled appointment" had to be made in person. Once again, however, Morales explained that Ramirez could have made the "scheduled appointment" either in person or on the phone. Morales relayed that there was no record to show how the appointment was rescheduled. Thus, Morales explained the "scheduled appointment" was not evidence of Ramirez's appearance at the parole office on November 17.

*3. Ramirez's Alleged Injuries*

Rangel testified that when Ramirez appeared on November 20, Ramirez was injured and on crutches. Conversely, Ramirez, Vasquez, Monica Ramirez, and Elizabeth Madero (Ramirez's ex-wife) all testified that Ramirez was not on crutches in November of 2006, but that he was injured during a roofing accident in February of 2007. The defense argued that Rangel was simply confused about the dates in question. The State acknowledges that there is no direct evidence that the driver of the vehicle was injured in the accident. Thus, the State argues that

Rangel's testimony that Ramirez was on crutches when he reported on November 20 was simply evidence that substantiated Rangel's memory of his meeting with Ramirez on that day.

## C. Analysis

All of Ramirez's sufficiency arguments touch on the jury's role as the fact-finder. We remain mindful that the jury is the sole judge of the weight and credibility of the evidence and is entitled to resolve conflicts in the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007); *Johnson*, 23 S.W.3d at 7. The DNA evidence, coupled with the contradictory alibi testimony, provides sufficient support for a jury to reasonably infer that Ramirez was on Cadillac Drive at the time of the accident, was in the truck when the airbag deployed, and was not at the parole office at the time of the accident. *See Earls*, 707 S.W.2d at 85. The jury apparently resolved the conflicting testimony in the State's favor. Based on a review of "the evidence in the light most favorable to the prosecution," we conclude a rational jury could find beyond a reasonable doubt that Ramirez was guilty of felony murder. *See Jackson*, 443 U.S. at 319. Thus, the evidence is sufficient to support the conviction.

## CONCLUSION

Because the probative value of the photograph of the victim was not substantially outweighed by the prejudicial effect, we conclude the trial court did not abuse its discretion in admitting the photograph. Additionally, although the defense presented evidence that Ramirez was not the driver of the Dodge pickup truck that struck and killed Mr. Stephens, the State presented evidence of Ramirez's DNA on the deployed airbag and evidence negating his alibi testimony. As such, we cannot say the evidence is insufficient to support the jury's verdict. Finally, based on the State's concessions, a conviction of both the felony murder and the manslaughter offenses violate Ramirez's rights against double jeopardy, and the manslaughter

conviction should be set aside and the felony murder conviction upheld. Furthermore, the habitual felony offender statute does not authorize the assessment of a fine. Accordingly, we reverse the trial court's judgment with regard to the manslaughter conviction and reform the judgment to delete the assessment of a fine. The judgment of the trial court is affirmed in all other aspects.

Rebecca Simmons, Justice

DO NOT PUBLISH