**Alfred Kenton McCRAY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–93–022 CR.**

Court of Appeals of Texas,
Beaumont.

Submitted Dec. 10, 1993.

Decided March 30, 1994.

Douglas M. Barlow, Beaumont, for appellant.

Tom Maness, Dist. Atty., John R. Dewitt, Asst. Dist. Atty., Beaumont, for State.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

This is an appeal from a conviction for the felony offense of Murder. Following their verdict of "guilty," the jury assessed appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of thirty-five (35) years. Appellant raises two points on appeal, *viz:*

> Point of Error One: The trial court erred in allowing a State's witness to speculate from blood splatters that the victim was "trapped."

> Point of Error Two: Reversible error occurred when the prosecutor referred to matters outside the record.

Appellant directs our attention to the following testimony of the State's witness, Carl Rose, who was a crime scene investigator for the Groves Police Department at the time the homicide occurred:

Q. (the State) And explain to the jury what that is.

A. (Detective Rose) Okay. Blood performs differently. It's like any liquid. When it's thrown, the angles at which it's thrown, also, the shape of the blood when it hits the wall or hits the—any type of hard substance has a different type of shape. You can basically tell where the victim was or what the victim was doing by that—the blood splatter or blood drippings or whatever like that.

Q. If you would, like, picture Number 12, hold that up as best you can for all these people to see. Explain the differences.

A. Okay. I'll be glad to. The blood on the back here, the large amount of blood here makes it appears (sic) in this photograph that the victim was trapped behind this door.

MR. BARLOW: Your Honor, I'll object to that. It's calling for pure speculation at this point.

THE COURT: Overruled.

THE WITNESS: The victim was trapped behind this door with her back on this wall. You could see where—a large amount of blood that actually dripped down. You don't have that large dripping pattern unless there's a large amount of blood present.

MR. BARLOW: Excuse me. Just for the recording, Your Honor, could I have a running objection to his rendering an opinion on—like that?

THE COURT: Yes, sir.

MR. BARLOW: And speculation.

THE COURT: Yes, sir.

THE WITNESS: Anyway, like I say, again, there is a large amount of blood present. The victim had to be on the wall or close to the wall where the blood was dripping for a period of time.

Also, you have blood splatters here with the pointed end going this way. Apparently there was something that caused the blood to be going in this direction. It always goes in the direction of the point. Either the victim was turned suddenly, or in this case it's possible a knife was swung or something like that and blood possibly could have come off the knife. That's what the photograph shows.

Appellant argues that because Detective Rose was not present at the time the offense took place, his testimony as to the victim being "trapped" was "improper speculation, and should have been limited by Rule 701, Texas Rules of Criminal Evidence." Tex.R.Crim.Evid. 701 provides: "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determina-

tion of a fact in issue." Appellant also argues, without fully explaining why, that the testimony in question was "not the proper subject of expert testimony." TEX.R.CRIM. EVID. 702 deals with testimony by experts, and provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Appellant sums up his argument by contending:

> Said testimony was obviously an attempt by the State to get "evidence" before the jury in the form of an opinion, whereby the prosecution could argue about the heinous intentions of appellant in "trapping" the victim to persuade the jury to render of (sic) guilt.

A full reading of the statement of facts of the instant case reveals that appellant ultimately conceded that he killed the victim. The sole issue for the jury was whether appellant was guilty of the offense of Murder, or merely Voluntary Manslaughter. The evidence before the jury was one of a cold-blooded killing of the victim by appellant. Appellant had kicked in the door to the victim's apartment, entered her bedroom brandishing a long-bladed knife, and engaging the unarmed victim in a violent encounter inside the bedroom resulting in the victim sustaining fifteen stab wounds mostly to the upper chest and back area of her body. Photographic evidence introduced without objection portrayed blood "splattered" areas inside the bedroom.

One of the first questions put to Detective Rose was if he had any training or experience with regard to fingerprinting, blood splattering, and photographing crime scenes. His response, outlining his formal training, was as follows:

> We've been through the Texas Department of Public Safety Identification Officers School. We've been through the FBI Latent Fingerprint School. We've been through FBI Advanced Latent Fingerprint School, the Texas Department Public (sic) Safety Advanced Latent Fingerprint school. We've gone through the Texas

Department of Public Safety Photography School. We've been through—Let's (sic) see. Several others including crime scene search, homicide investigation and—Let's (sic) see. Assault and death investigation. All these through the Texas Department of Public Safety in Austin.

Detective Rose further testified that he had investigated many crime scenes in his eighteen years with the Groves Police Department. None of Detective Rose's training or experience with regard to crime scene investigation was questioned by appellant at any point during the trial.

■ Determinations of admissibility of evidence rest within the sound discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion. *Montgomery v. State,* 810 S.W.2d 372, 386 (Tex.Crim.App.1991) (opinion on rehearing). Although properly referring us to the Rules of Criminal Evidence, all of the cases cited by appellant as authority for his position were decided prior to the effective date of said Rules. At any rate, we find that whether considering Detective Rose a "lay witness," thus triggering the provisions of Rule 701, or considering him an "expert" witness as described in Rule 702, the trial court did not err in admitting his testimony that the victim was "trapped" behind the door of her bedroom during her fatal encounter with appellant. In *Yohey v. State,* 801 S.W.2d 232, 242–243 (Tex.App.—San Antonio 1990, pet. ref'd), a police witness was permitted by the trial court to testify, over the defendant's objection, as to an approximate time of death of a shooting victim. In his opinion in *Yohey,* former Presiding Judge John Onion wrote:

> Given the circumstances, we conclude that the evidence was admissible under both TEX.R.CRIM.EVID. 701 (Opinion Testimony by Lay Witnesses) and 702 (Testimony by Experts). " . . . [A] witness may qualify to give testimony both under Rule 702 because of his superior experiential capacity and under Rule 701 if his testimony and opinion are based on first hand knowledge." H. WENDORF & D. SCHLUETER, TEXAS RULES OF EVIDENCE MANUAL, art. VII at 265 (2nd ed. 1988). The challenge went to the

weight of the testimony, not to its admissibility. The trial court did not abuse its discretion in admitting the testimony.

*Id.* at 243.

In the instant case, we, too, find no abuse of discretion by the trial court under the rationale provided by Judge Onion in *Yohey*. Point of error one is overruled.

■ Appellant's second point of error complaining of a portion of the State's jury argument during the punishment phase of the trial focuses our attention on the following:

> [THE STATE]: You know, is this really a person that's rehabilitated? That is at the purpose of probation; necessary to protect the community and to rehabilitate the defendant.
>
> Sure, we don't want to see people come out of prison and commit crimes again. All of us hope they are rehabilitated. But you know what this is called? This is called the punishment phase. It's not called the rehabilitation phase. All the counseling he can get is in prison for as long as we can send him there.
>
> MR. BARLOW: Your Honor, I'll object to that. That's cleatly (sic) outside the record.
>
> THE COURT: Overruled.

Appellant contends that he was denied a fair trial because "[d]uring the argument as to punishment, the prosecutor referred to his apparent belief that appellant could receive all the counseling he needed in prison[.]" Appellant argues that as he was eligible for probation but was assessed thirty-five years' confinement instead, he was obviously harmed by the State's improper argument.

■ Error arising from allegedly improper jury argument must be viewed in the context of the entire argument, *Mosley v. State,* 686 S.W.2d 180, 183 (Tex.Crim.App. 1985). Isolated sentences taken out of context may take on a meaning different from that understood by the jury. *Drew v. State,* 743 S.W.2d 207, 220 (Tex.Crim.App.1987). Proper jury argument falls into four categories of discussion: 1) summation of evidence; 2) reasonable deductions from evidence admitted for consideration by the jury; 3) re-

joinder to argument by opposing counsel; and 4) plea for law enforcement. *Cantu v. State,* 842 S.W.2d 667, 690 (Tex.Crim.App. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993).

In the instant case, the record of the punishment hearing reflects that appellant took the witness stand, down-played his culpability for the killing, placed blame for the victim's death on the victim herself, and indicated a strong need for psychological counseling which could be received under court-ordered terms of probation. In that light, we find that, taken in its entirety, the State's closing argument was not intended to place in the jury's collective mind that said counseling was also available in prison. To the contrary, the State's argument, taken as a whole, was a desperate plea for law enforcement by the State. Appellant's own testimony indicated that he was on probation for kidnapping when he committed the instant offense, and that the murder victim, Muriel Narcisse, was the victim in the kidnapping offense. It is clear, even from the brief portion of the State's argument reproduced above, that the prosecutor, faced with evidence of several acts of violence against Ms. Narcisse prior to the murder, for which appellant seemed unremorseful and made no attempt at the time to secure counseling, was strongly advising the jury to reject appellant's "rehabilitation" punishment strategy and send appellant to the penitentiary for the maximum life sentence. Taken in that vein, the complained-of remark, "All the counseling he can get is in prison for as long as we can send him there[,]" appears to be the prosecutor's attempt at conveying to the jury his sense of sarcastic disgust at appellant's request for another try at probation. We find said remark was not an attempt to inject new evidence into the record at appellant's expense, but was, in light of the entire argument, a proper plea for law enforcement. Point of error two is overruled; the judgment and the sentence of the trial court are affirmed.

AFFIRMED.