In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00056-CR**
_____

**RAMON MONTOYA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause No. 15-21649**

## MEMORANDUM OPINION

A grand jury indicted Appellant Ramon Montoya for aggravated sexual assault of S.S.,[1] a child who was at the time of the offense younger than six years old. *See* Tex. Penal Code Ann. § 22.021 (West Supp. 2017).[2] A jury found Montoya

---

[1] We use initials herein to identify the victim, her mother, and civilian witnesses. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims the "right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

guilty and assessed punishment at ninety-nine years. Montoya brings four issues on appeal. In three issues, Montoya challenges the jury charge. In his fourth issue, Montoya argues that the trial court erred in overruling his objection to the testimony provided by a child advocacy center examiner. We overrule his issues and affirm.

## Background

On February 25, 2015, a grand jury indicted Montoya for aggravated sexual assault of S.S. by a child for "intentionally and knowingly" causing the penetration of the sexual organ of [S.S.], with Defendant's sexual organ. Montoya pleaded not guilty and his case was tried before a jury in February of 2017.

Testimony of C.S.

C.S. testified that she was S.S.'s mother, and that S.S. was her daughter by her first marriage. C.S. explained that when she was married to Montoya, she worked as a nurse during the day, and Montoya would stay with S.S. and take her to school.

C.S. recalled that November 21, 2014 was the Friday before Thanksgiving, and S.S.'s school was having a Thanksgiving celebration. C.S. picked up donuts before she went to work for S.S. to take to school. C.S. left for work after getting the donuts, and she planned on being at S.S.'s school at 8 a.m. Montoya and S.S. sent

---

[2] We cite to the current version of statutes herein because subsequent amendments do not affect our disposition.

her a photo while waiting for C.S. to arrive at the school, which they had never done. C.S. explained that, upon arriving at the school, she observed S.S. looking nervous and watching Montoya. C.S. explained that she wanted to stay a bit longer, but Montoya was very insistent that he and she leave at the same time.

C.S. testified that she picked S.S. up that afternoon at about 3 p.m., after which she went to pick up food that Montoya requested and took it to him at the video game store they had at a flea market. C.S. asked S.S. who her best friend was, and S.S. replied that Montoya was. S.S. then said he was not her best friend, and when C.S. asked why, S.S. told her "[b]ecause he likes to play ball-ball." C.S. explained that S.S. previously had said to her that "boys have ball-balls and girls have hoo-has[,]" and that C.S. understood S.S. to be referring to her vagina when using the expression "hoo-ha." C.S. testified that she asked S.S. what she meant that day, and S.S. responded "[i]t's when you push it in all the way." C.S. asked S.S. what Montoya put where, and S.S. replied that he put his "ball-ball[]" in her "hoo-ha."

C.S. explained that after arriving at Montoya's shop, she told Montoya that S.S. did not want to get out of the car "[b]ecause apparently, you-all wanted to play ball-ball this morning." According to C.S., Montoya said "[s]he is lying. You know she makes stuff up. She's lying." C.S. said she regarded Montoya's response as an admission of guilt, and she went home to get clothes so she and S.S. could stay with

3

her mother. Later that day, C.S. took S.S. to the emergency room because her mother had said S.S. should be checked. C.S. explained that the police showed up at the hospital and escorted C.S. and S.S. to the Sexual Assault Nurse Examiner's (SANE) office. According to C.S., after the examination, S.S. went to her mother's house and C.S. went back to her home with the police for evidence collection.

C.S. testified that S.S. went to counseling at Garth House for about six months. C.S. explained that S.S. seemed "different, upset, just depressed[]" after the incident, would lash out at her brother and her biological father, and she would try to take people's clothes off, which S.S. had not done before and S.S. explained it is what she does if she loves someone. According to C.S., S.S.'s story about what happened has never changed. C.S. also testified that teachers had reported that S.S. had trouble at school on the day of the incident, she fell twice during recess, and she kept saying her legs did not work. In addition, C.S. testified that S.S. had bathed the night before the incident.

Testimony of Police Officers

Detective Sanders with the Jefferson County Sheriff's Office testified that she met C.S. at the hospital after having received a call of the suspected sexual abuse of a child. According to Sanders, she went to Montoya's home that evening to collect evidence. Sanders testified that Montoya made a voluntary statement to her the

4

Monday following the incident. Sanders explained that Montoya "described his relationship with [S.S.] as boyfriend and girlfriend[,]" and that he was "thrown off" because, since the allegations had surfaced, he no longer got a nightly hug and kiss from S.S. Sanders described Montoya as "very animated" and "lit up" when speaking about S.S. but he displayed negativity when speaking of C.S. State's Exhibit 1 was admitted into evidence and published to the jury, which Sanders identified as a true and accurate recording of Montoya's voluntary statement to her. Sanders testified that she took buccal swabs from C.S., Montoya, and S.S.'s father. Sanders agreed that a hair had been found in S.S.'s genital region during the SANE exam, and that the hair had been tested and it was found not to be Montoya's. Sergeant Robert Bailey with the Jefferson County Sheriff's Office testified that if a sexual assault victim bathed after the assault, any evidence on the outside of the body would be destroyed.

Testimony of B.G.

B.G., a SANE, testified that S.S. and C.S. came to her office on November 21, 2014. B.G. explained that she took a history from S.S. and "[S.S.] said that [Montoya], her husband, had done something that he shouldn't have done and he does it in the morning and he put his ball-ball in her hoo-ha and that juicy stuff came out and got on her stomach and her legs." According to B.G., S.S. referred to

5

Montoya as her "husband" on multiple occasions. B.G. also testified that S.S. indicated what she meant by "ball-ball" and "hoo-ha" by pointing between her own legs. The SANE testified that S.S. said that she had bathed since the incident occurred. According to B.G., it was possible that S.S. had washed away physical evidence.

B.G. also testified that she conducted a physical examination of S.S. and found a black hair in S.S.'s genital area, but she did not see any signs of healed or acute trauma, although B.G. reported that the lower half of S.S.'s hymenal rim tissue was thin, which she explained is consistent with penetration but not conclusive of sexual abuse. According to B.G., it is not unusual not to find tears, rips, or healing scars when doing a sexual assault examination on a child, and that from what S.S. had explained, "more than likely it did not go into the vaginal vault, into the vagina. It went to the opening." B.G. further testified that S.S.'s history and exam were consistent and B.G. concluded "that it was a sexual assault by history."

Testimony of J.P.

J.P., the clinical director of the Garth House Children's Advocacy Program also testified. The defense objected to J.P. "giving her opinions." J.P. explained that she has a bachelor's degree in psychology and a master's degree in marriage and family counseling, and she is licensed as a Licensed Professional Counselor and a

Licensed Professional Counselor Supervisor. J.P. stated that the Garth House, where she has worked for nineteen years, provides counseling services for child victims and their caregivers, and that she sometimes serves as a forensic examiner, talking with children in a developmentally appropriate manner to gather forensically sound information to assist in investigations. J.P. described various considerations when interviewing young children which related to their limited attention span and limited cognitive development.

J.P. performed a forensic interview of S.S. after the alleged assault when S.S. was five years old. She described S.S. as distractible and explained that S.S. often responded to questions with avoidance, such as "I don't know" or "I don't remember." According to J.P., children may use avoidance because they do not want to talk about a painful memory that could be overwhelming.

Testimony of S.S.

At the time of trial, S.S. was seven years old. S.S. testified that Montoya used to live with her, and she identified the defendant as Montoya. S.S. agreed that her mother worked and would be gone when it was time for her to go to school, and that Montoya stayed at home and would take her to school.

S.S. recalled a Friday before Thanksgiving, when she woke up after her mother had gone to work and Montoya came into her room. S.S. agreed that

7

"something bad" happened that morning after she got dressed, and she said "[h]e played ball-ball with me." S.S. testified that Montoya told her to take her clothes off, that Montoya's "ball-ball" went into her "hoo-ha[,]" and that it felt bad and hurt. S.S. explained that "ball-ball" was a boy's private part, and "hoo-ha" was a girl's private part, and she pointed to the genital areas on a boy doll and a girl doll to demonstrate. S.S. agreed that some stuff came out of Montoya's "ball-ball" and went "inside [her] private part[]" and onto her leg and that she had to "wipe it off between [her] legs." S.S. recalled taking a bath afterwards and wiping her leg with a wet wipe, and she told the SANE that she took a bath.

Testimony of Forensic Scientists

The defense called two forensic scientists to testify. Jenny Lounsbury testified that she is a forensic scientist with the Department of Public Safety (DPS) in Houston where she has worked for about three and a half years. Lounsbury explained that she visually examined trace evidence taken from S.S. using a microscope and compared the hair found on S.S. with hairs pulled from Montoya, and she concluded the hair found on S.S. was different from Montoya's. Lounsbury agreed that if a person bathes after they have been sexually assaulted, it is possible they could bathe away a lot of trace evidence.

8

Jessica Ehmann testified that she is a forensic scientist in the DNA section of the DPS Public Safety Criminal Laboratory in Houston where she has worked for about six years. Ehmann explained that in October of 2015, she issued a report concerning a known sample of a buccal swab from Montoya and a hair found in S.S.'s genital area. According to Ehmann, the hair taken from S.S. did not have enough cells for a DNA profile, so she was unable to compare it to Montoya or S.S. According to Ehmann, it is "pretty typical" not to be able to get a full DNA profile from hairs.

Testimony of Montoya and His Mother

Montoya denied sexually assaulting S.S. or touching her inappropriately. Montoya did not believe S.S. had said he put his "ball-ball" in her "hoo-ha[,]" and he explained that, when C.S. first told him of the allegations, he was shocked. According to Montoya, C.S., S.S.'s mother, had issues with anger and depression and took psychiatric medication. He agreed that in his recorded statement to Detective Sanders he stated that C.S. needed an excuse because C.S. was having an affair, and the accusations regarding S.S. were her excuse. In Montoya's opinion, S.S. had been "coached."

Montoya's mother testified that she had never seen any indication of inappropriate acts by Montoya in relation to S.S. She also testified that in about

9

January of 2015, she became aware that Montoya and C.S. were having marital problems, and that in her opinion, S.S. was "manipulated and coerced into this whole scenario."

## Jury Charge

In three issues, Montoya challenges the jury charge. First, Montoya argues that the trial court erred by denying his request for a jury instruction on the lesser-included offense of indecency with a child. In addition, Montoya argues that the trial court egregiously erred in giving a partial definition of "beyond a reasonable doubt" in the jury instruction. Montoya also argues that the trial court egregiously erred in improperly defining "intentionally and knowingly."

### Standard of Review

We review claims of jury charge error under a two-pronged test. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). We first determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If error exists, we then evaluate whether the error caused harm. *Id.* The degree of harm required for reversal depends on whether that error was preserved in the trial court. *Id.* When error was preserved in the trial court, we must reverse if the error is "calculated to injure the rights of [the] defendant[.]" Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006). In other words, we must determine whether there was some

harm. *Trevino v. State*, 100 S.W.3d 232, 242 (Tex. Crim. App. 2003) (citing *Almanza*, 686 S.W.2d at 171). This standard requires the reviewing court to find that the defendant "'suffered some actual, rather than merely theoretical, harm from the error.'" *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013) (quoting *Warner v. State*, 245 S.W.3d 458, 462 (Tex. Crim. App. 2008)). In evaluating whether there was some harm, we consider "'the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel[,] and any other relevant information revealed by the record of the trial as a whole.'" *Barron v. State*, 353 S.W.3d 879, 883 (Tex. Crim. App. 2011) (quoting *Almanza*, 686 S.W.2d at 171).

The trial court must give the jury "a written charge distinctly setting forth the law applicable to the case[.]" Tex. Code Crim. Proc. Ann art. 36.14 (West 2007). The purpose of the jury charge is to instruct the jury on the law that applies to the case and to guide the jury in applying the law to the facts of the case. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007) (citing *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)). The purpose of the definitions in the charge is to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge. *Caldwell v. State*, 971 S.W.2d 663, 666 (Tex.

11

App.—Dallas 1998, pet. ref'd). As the Court of Criminal Appeals has explained, a jury charge is adequate:

> . . . if it either contains an application paragraph specifying all of the conditions to be met before a conviction under such theory is authorized, or contains an application paragraph authorizing a conviction under conditions specified by other paragraphs of the jury charge to which the application paragraph necessarily and unambiguously refers, or contains some logically consistent combination of such paragraphs.

*Plata v. State*, 926 S.W.2d 300, 304 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997).

Lesser-Included Offense

A two-step test determines whether a lesser-included offense instruction should be given to the jury. *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016); *Hall v. State*, 225 S.W.3d 524, 535-36 (Tex. Crim. App. 2007). First, the trial court must determine "whether the requested instruction pertains to an offense that is a lesser-included offense of the charged offense, which is a matter of law." *Bullock*, 509 S.W.3d at 924. Where the requested offense is established by proof of the same or less than all the facts required to establish the offense charged, the first step is satisfied. *See id.*; *see also* Tex. Code Crim. Proc. Ann. art. 37.09 (West 2006).

"The second step in the analysis asks whether there is evidence in the record that supports giving the instruction to the jury." *Bullock*, 509 S.W.3d at 924-25.

12

Under this step, "a defendant is entitled to an instruction on a lesser-included offense when there is some evidence in the record that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense." *Id.* at 925. "The evidence must establish that the lesser-included offense is a valid, rational alternative to the charged offense." *Id.* This step requires "examining all the evidence admitted at trial, not just the evidence presented by the defendant." *Id.* A defendant is entitled to the instruction on anything more than a scintilla of evidence, but "it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Id.* When reviewing the trial court's ruling, we cannot consider "the credibility of the evidence and whether it conflicts with other evidence or is controverted." *Id.* Accordingly, "the standard may be satisfied if some evidence refutes or negates other evidence establishing the greater offense or if the evidence presented is subject to different interpretations." *Id.*

In the context of the instant case, the offense of aggravated sexual assault requires penetration of the female sexual organ, whereas the offense of indecency with a child is a lesser-included offense that may be proved by mere touching of the child's genitals or touching the child with the defendant's genitals if the defendant

13

did so with the intent to arouse or gratify sexual desire. *See* Tex. Penal Code Ann. §§ 21.11(a) (West Supp. 2017) (Indecency with a Child), 22.021(a) (Aggravated Sexual Assault); *Evans v. State*, 299 S.W.3d 138, 141 (Tex. Crim. App. 2009); *Pullin v. State*, 827 S.W.2d 1, 3 (Tex. App.—Houston [1st Dist.] 1992, no pet.) (citing *Cunningham v. State*, 726 S.W.2d 151, 153 (Tex. Crim. App. 1987)).

In his brief, Appellant argues that S.S.'s testimony used "unclear" or "childish" language that is open to various interpretations, including a conclusion that touching but not penetration occurred. Appellant also notes that the SANE testified that "more than likely it did not go into the vaginal vault, into the vagina. It went into [sic] the opening." According to Appellant, the evidence constitutes more than a scintilla of evidence raising the lesser-included offense.

S.S. testified that Montoya put his "ball-ball" in her "hoo-ha." C.S. and the SANE testified that S.S. told them the same thing. After the defense rested, the following discussion occurred concerning a lesser-included instruction:

> [Defense counsel]: Your Honor, I was just thinking this. If they were to believe there was no penetration but something did happen, then that lesser included of indecency would arise when she talked about being naked together and all.

> THE COURT: All right. Can you cite in the record where there is any evidence that reflects -- the record states that the act, whenever it is alleged by the evidence by the witnesses was penetration. Anything -- anybody heard anything that there was not penetration? Because the defense, you didn't --

14

[Defense counsel]: No, Your Honor.

THE COURT: Your position is nothing happened illegally. The State's evidence has been something happened, and it is by penetration of sexual organs. Can anybody cite me one part of the record that doesn't reflect that? It's either all or nothing, right?

[Defense counsel]: I understand your position.

THE COURT: Well, it has to be something in the record to support a lesser included offense.

[Defense counsel]: Well, what specifically I was referring to is when she said that the ejaculation occurred on her stomach and leg and all. They might believe that there was no penetration; but as far as any evidence on saying that, no, there is not.

THE COURT: What's the State say about it?

[State's counsel]: Judge, I don't think there is evidence. Every time she said, "He put his ball-ball in my hoo-ha." And so, I don't see just that being on her leg[.] . . .

THE COURT: . . . whenever in the record the alleged act was described, it included penetration. So, because the parties can't cite otherwise and I don't see it in the record, the Court deems that under the law, it does not rise to the inclusion of a lesser included offense. We're just going to go forward with the indicted offense, and the jury will be deliberating on that only.

The defense was unable to cite the trial court to any evidence that would permit a jury to rationally find that the defendant was guilty only of the lesser-included offense of indecency because genital touching, but not penetration, had occurred. *See Bullock*, 509 S.W.3d at 925. On the record before us, we conclude that

15

the trial court did not err in denying the lesser-included offense because it was not supported by the evidence and did not constitute "a valid, rational alternative to the charged offense." *Id.*

"Beyond a Reasonable Doubt"

The jury charge included the following instruction: "It is not required that the prosecution prove guilt beyond all possible doubt[.]" Appellant argues this statement was an improper "partial definition" of reasonable doubt and that the trial court erred egregiously in giving it. Appellant did not object to the charge on this basis at trial. Therefore, reversal is warranted only if the error is so egregious and created such harm that Appellant did not have a fair and impartial trial. *See Almanza*, 686 S.W.2d at 172.

The Court of Criminal Appeals has previously considered and rejected this argument. *See Woods v. State*, 152 S.W.3d 105, 114-15 (Tex. Crim. App. 2004); *see also Randall v. State*, 232 S.W.3d 285, 294 (Tex. App.—Beaumont 2007, pet. ref'd). The complained-of language is a permissible *instruction* regarding reasonable doubt and is not a *definition* of reasonable doubt. *See Burrows v. State*, 492 S.W.3d 398, 407 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (citing *Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000)). The Court of Criminal Appeals has explained that, while the "better practice" is to avoid defining reasonable doubt, it is

not reversible error for the State and defense to agree on a jury instruction that includes the sentence to which Appellant objects. *See Paulson*, 28 S.W.3d at 573. Therefore, we conclude that the trial court did not err by including the complained-of instruction. *See Randall*, 232 S.W.3d at 294. Because we find no error, we do not engage in a harm analysis. *See* Tex. R. App. P. 47.1; *Morales v. State*, 32 S.W.3d 862, 866 n.7 (Tex. Crim. App. 2000); *Mayer v. State*, 494 S.W.3d 844, 853 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

<u>"Intentionally and Knowingly"</u>

Appellant also argues that the trial court erred egregiously in defining "intentionally and knowingly." According to Appellant, on a charge of aggravated sexual assault, the mental state definition should be limited to the nature of the conduct, not the result. Appellant cites to *Belmares v. State*, No. 03-11-00121-CR, 2011 Tex. App. LEXIS 9273, at **3-7 (Tex. App.—Austin Nov. 23, 2011 pet. ref'd) (mem. op., not designated for publication) and *Ates v. State*, No. 03-09-00501-CR, 2011 Tex. App. LEXIS 860, at **17-18 (Tex. App.—Austin Feb. 4, 2011, pet. ref'd) (mem. op., not designated for publication) in support of his argument that there is a split of authority on this issue. Because Appellant did not object at trial, reversal is warranted only if the error is so egregious and created such harm that Appellant did not have a fair and impartial trial. *See Almanza*, 686 S.W.2d at 172.

17

The Texas Penal Code defines "intentionally" and "knowingly" as follows:

> [] A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.
> [] A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

Tex. Penal Code Ann. § 6.03(a), (b) (West 2011). The trial court gave the following definitions:

> A person acts intentionally, or with intent, with respect to a result of his/her conduct when it is his/her conscious objective or desire to cause the result.
> . . . .
> A person acts knowingly, or with knowledge, with respect to a result of his/her conduct when (s)he is aware that his/her conduct is reasonably certain to cause the result.

In addition to tracking the statutory definitions of the culpable mental states, the trial court's definition also limited the scope of the definitions in the application paragraph to the alleged conduct:

> Now, if you believe from the evidence beyond a reasonable doubt that in Jefferson County, Texas, on or about November 21, 2014, the defendant Ramon Anthony Montoya, did then and there intentionally or knowingly cause the penetration of the sexual organ of [S.S.], a child who was then and there younger than six (6) years of age, by inserting defendant's sexual organ, you shall find the defendant GUILTY of the offense of Aggravated Sexual Assault of a Child.

18

> Unless you so find, or if you have a reasonable doubt thereof, you shall find the defendant NOT GUILTY.

Thus, the jury was instructed that it could convict Montoya of aggravated sexual assault of a child only if it found that he had intentionally or knowingly caused the penetration of the sexual organ of S.S. This is consistent with the statutorily prohibited conduct. *See* Tex. Penal Code Ann. § 22.021. When the application paragraph of the charge correctly instructs the jury on the law applicable to the case, this mitigates against a finding of egregious harm. *See Patrick v. State*, 906 S.W.2d 481, 493 (Tex. Crim. App. 1995); *Hughes v. State*, 897 S.W.2d 285, 296-97 (Tex. Crim. App. 1994); *see also Belmares*, 2011 Tex. App. LEXIS 9273, at *9.

Furthermore, this was not a case in which intent was a contested issue at trial. Montoya's defense was not that he had accidentally touched S.S. or that he lacked the requisite mental state to commit the charged offense. Instead, Montoya denied that the incident even occurred, and his theory during trial was that the child's outcry was fabricated. On this record, we conclude that Montoya was not deprived of a fair and impartial trial. *See Patrick*, 906 S.W.2d at 493; *Almanza*, 686 S.W.2d at 172. We overrule Appellant's three issues challenging the jury charge.

## Expert Witness

In his fourth issue, Appellant argues that the trial court erred in overruling his objection to the expert opinion of J.P., the child advocacy center interviewer.

Montoya argues J.P.'s opinion testimony was not "valid expert testimony" under Texas Rule of Evidence 702. According to Appellant, the witness's testimony concerning developmental issues relevant to a child's testimony "distract[ed] the jury from a true assessment of the child's credibility and instead, allow[ed] the expert testimony to fill in the holes in the State's case." Appellant also argues that the trial court erred in allowing J.P.'s testimony because it failed to meet the requirements set forth in *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992). According to Appellant, the State failed to show that the underlying scientific theory was valid, the technique applying the theory was valid, and the technique was properly applied. Additionally, Appellant argues that J.P.'s testimony was inadmissible under *Nenno v. State*, 970 S.W.2d 549 (Tex. Crim. App. 1998), because the State failed to show that her field of expertise was legitimate, that her testimony was within that field, and that she properly relied upon and utilized principles in the field.

Rule 701 governs the admission of lay testimony, and Rule 702 governs the admissibility of expert testimony. *See* Tex. R. Evid. 701, 702. A witness may qualify to give testimony under both Rules 701 and 702. *See Osbourn v. State*, 92 S.W.3d 531, 535-39 (Tex. Crim. App. 2002); *Harnett v. State*, 38 S.W.3d 650, 659 (Tex. App.—Austin 2000, pet. ref'd) (citing *Ventroy v. State*, 917 S.W.2d 419, 422 (Tex. App.—San Antonio 1996, pet. ref'd); *McCray v. State*, 873 S.W.2d 126, 128 (Tex.

20

App.—Beaumont 1994, no pet.); *Yohey v. State*, 801 S.W.2d 232, 243 (Tex. App.—San Antonio 1990, pet. ref'd); *Austin v. State*, 794 S.W.2d 408, 410-11 (Tex. App.—Austin 1990, pet. ref'd)). Opinion testimony by a lay witness is admissible if it is rationally based on the witness's perception and helpful to understand the witness's testimony or to determine a fact in issue. *See* Tex. R. Evid. 701. A witness may qualify to testify as an expert by her knowledge, skill, experience, training, or education. *Id.* at 702. We will not disturb a trial court's decision to permit a witness to testify as an expert or as layperson absent a showing of an abuse of discretion. *See Osbourn*, 92 S.W.3d at 537-38; *Harnett*, 38 S.W.3d at 657 (citing *Ventroy*, 917 S.W.2d at 422).

In this case, the trial court found J.P.'s testimony admissible under Rules 701 and 702. *See* Tex. R. Evid. 701, 702. At trial, the State explained that it offered J.P. as a witness to testify to

> . . . the field of development and what a child in certain age areas are capable of testifying to and relating to grownups as far as experiences and their traumatic experience of sexual assault or abuse. In other words, I want her to be able to testify as to she met [S.S.] and to what [S.S.'s] -- where she was developmentally as far as her age group and what she is capable of being able to relate and what she's not capable of being able to relate.

J.P. testified that she is a licensed professional counselor and that she is the clinical director at the Garth House Children's Advocacy Program where she has worked for

about nineteen years and where she has counseled child victims and their caregivers. On voir dire, J.P. explained that in her professional experience, she has become very familiar with the emotional, physical, and psychological development of children. J.P. testified that she had personally conducted a forensic interview of S.S.

On the record before us, we cannot say that the trial court abused its discretion in admitting J.P.'s lay opinion testimony because it was rationally based on her firsthand observations and perceptions. *See* Tex. R. Evid. 701; *Hartnett*, 38 S.W.3d at 657. Because we find J.P.'s opinion testimony admissible under Rule 701, we need not also address whether it was admissible under Rule 702. *See* Tex. R. App. P. 47.1; *Roderick v. Texas*, 494 S.W.3d 868, 874 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (a trial court's ruling on the admission of evidence will be affirmed if it was correct under any applicable theory of law) (citing *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)). We overrule Appellant's fourth issue.

Having overruled all Montoya's issues, we affirm the judgment of conviction.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on January 31, 2018
Opinion Delivered March 21, 2018
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.